FILED

NOV 13 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

GRANT L. KIM (SBN 114989)
Grant.Kim@limnexus.com
PHILLIP SHINN (SBN 112051)
Phil.Shinn@LimNexus.com
SHINHONG BYUN (SBN 264129)
Shinhong.Byun@LimNexus.com
LIMNEXUS LLP
220 Montgomery Street, Suite 1411
San Francisco, CA 94104
Tel.: (415) 619-3320 Fax: (213) 955-9511

Attorneys for Applicants HRC-Hainan Holding Company,
LLC, D&W Holding Company, LLC, and Hainan HRC
Hospital Management and Consulting Co., Ltd.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

TSH

CV 19 80 277 MISC

In re Application of

HRC-HAINAN HOLDING COMPANY, LLC,
D&W HOLDING COMPANY, LLC, AND
HAINAN HRC HOSPITAL MANAGEMENT
AND CONSULTING CO., LTD.

Applicants,

For Order Authorizing Discovery For Use In
Foreign Proceedings Under 28 U.S.C. § 1782

Case No.

**DECLARATION OF LIU YANG IN
SUPPORT OF APPLICATION FOR
ORDER AUTHORIZING
DISCOVERY FOR USE IN
FOREIGN PROCEEDINGS UNDER
28 U.S.C. § 1782**

I, Liu Yang, declare as follows:

1.     I am an attorney at Llinks Law Offices, counsel for Applicants HRC-Hainan Holding Company, LLC ("HRC-Hainan"), D&W Holding Company, LLC ("D&W"), and Hainan HRC Hospital Management and Consulting Co., Ltd. ("HRC-China") in the legal proceedings in the People's Republic of China ("China") described below.  I am admitted to practice law in China.  I have personal knowledge of the facts stated herein and am competent to testify thereto.  I submit this declaration in support of the Application for Order Authorizing Discovery For Use in Foreign Proceedings of Applicants HRC-Hainan, D&W, and HRC-China.

[01280016]          **Decl. of Liu Yang ISO Application for 1782 Discovery**                    1

A.    The CIETAC Arbitration

2.    On August 14, 2019, our law firm submitted a Request for Arbitration ("RFA") on behalf of Applicants to the China International Economic and Trade Arbitration Commission ("CIETAC") in Beijing, China.  Attached as Exhibit 1 hereto is a true and correct copy of an English translation and the Chinese original of the RFA (not including exhibits).

3.    As the RFA explains, the CIETAC Arbitration arises from a "Collaboration Agreement" between Applicants and Ciming Bo'ao International Hospital Co., Ltd. ("Ciming"), concerning a new In Vitro Fertilization ("IVF") Center at Ciming's hospital in Hainan, China.  (RFA ¶ 1.1.)  Applicants invested millions of dollars to build and equip the IVF Center and to enable Respondents to obtain an extremely valuable license to provide IVF services ("the IVF Approval").  (*Id.* ¶ 1.2.)  After obtaining the IVF Approval, Ciming breached the Collaboration Agreement by preventing Applicants from operating the IVF Center and seizing control of all property therein, and then announcing that they would provide IVF services using their own "American doctors" who are not affiliated with Applicants.  (*Id.* ¶¶ 1.2, 1.3, 10.2, 11.1-11.4.)  Ciming also transferred control of the company from Ms. Yihan Hu, the 95% shareholder who signed the contract for Ciming, to her mother, Dr. Xiaohong Han, without providing prior notice or obtaining Applicants' approval, as required by the Collaboration Agreement.  (*Id.* ¶¶ 7.2, 10.1.)

4.    Applicants seek monetary, injunctive, and declaratory relief from Ciming in view of its breach of the Collaboration Agreement and other wrongful conduct.  (*Id.* ¶ 5.)

5.    On September 6, 2019, CIETAC formally accepted the Request for Arbitration and initiated the proceedings.  Attached as Exhibit 2 hereto is a true and correct copy of an English translation and the Chinese original of the "Arbitration Notice" issued by CIETAC.

6.    On October 25, 2019, CIETAC confirmed the constitution of the Arbitral Tribunal, which consists of three arbitrators, and set a hearing for November 29, 2019.

7.    Applicants are entitled to submit evidence to the CIETAC Arbitral Tribunal, including evidence obtained through the assistance of a U.S. court in proceedings under 28 U.S.C. § 1782.  Obtaining and submitting such evidence to the CIETAC Arbitral Tribunal would not be contrary to any CIETAC rule or to any restrictions on proof-gathering under Chinese law.

LimNexus LLP

8.     CIETAC is a leading permanent arbitral institution that was established in 1956 under the China Council for the Promotion of International Trade. Since 2000, CIETAC has also been known as the Arbitration Court of the China Chamber of International Commerce. According to its website, CIETAC has conducted nearly 30,000 arbitrations involving parties from over 100 countries and regions outside of Mainland China, and its awards have been recognized and enforced worldwide. CIETAC's caseload is one of the heaviest among the world's major arbitral institutions, with a recent average of more than 2,000 cases per years.

**B.     The Hainan Court Asset Preservation Case**

9.     On September 20, 2019, Applicant Hainan HRC Hospital Management and Consulting Co., Ltd. ("HRC-China") submitted to the No. 1 Intermediate People's Court of Hainan Province, China (the "Hainan Court") two applications for provisional relief against Ciming (collectively referred to as the "Hainan Court Asset Preservation Case"):[1]

- An Application for Asset Preservation, which sought to freeze Ciming's bank deposits of about RMB 143 million or other equivalent assets, so as to ensure that an award in the CIETAC Arbitration against Ciming could be enforced; and

- An Application for Injunctive Measures, which sought a preliminary injunction prohibiting Ciming from using or transferring the tangible and intangible property at the IVF Center that Ciming had unlawfully seized.

10.     Attached as Exhibit 3 hereto is a modified version of HRC-China's application to the Hainan Court for an asset freezing order, which includes the original Chinese text to which an English translation has been added for all text other than portions of the list of assets to be frozen. As indicated by Exhibit 3 (pages 3-4), the application sought to freeze about RMB 143 million (or about US $20 million)[2] in two specific Ciming accounts at the Agricultural Bank of China, or

---

[1] In accordance with the CIETAC arbitration rules, HRC-China's applications for provisional relief were included with the Request for Arbitration submitted in August 2019 to CIETAC, which then forwarded them to the Hainan Court.

[2] "RMB" is the basic unit of Chinese currency. 1 RMB is currently about 0.14 USD, so 143 million RMB is about 20 million USD (143 million × 0.14 = 20,020,000).

1   other equivalent assets, "[i]n order to prevent the Respondent [Ciming] from transferring and

2   concealing its properties during the arbitration process, rendering the arbitration award

3   ineffective...." The application also sought to seal up and freeze medical devices and other

4   property at the IVF Center owned by HRC-China, which Ciming had illegally seized.

5        11.    On September 27, 2019, the Hainan Court granted HRC's application to freeze

6   Ciming's assets of about RMB 143 million. Attached as Exhibit 4 hereto is a true and correct

7   copy of an English translation and the Chinese original of the Hainan Court order granting HRC's

8   application to freeze Ciming's assets. On the same date, the two banks identified in HRC-China's

9   application notified the Hainan Court that only about RMB 628,000 (about US $88,000) was

10   actually frozen due to insufficient funds in the two bank accounts. On October 8, 2019, HRC-

11   China requested that the Hainan Court freeze a third Ciming bank account it had discovered, but

12   was notified that only about RMB 16,000 was frozen due to insufficient funds in the account.

13        12.    Thus, while the Hainan Court authorized freezing RMB 143 million in Ciming's

14   bank account and other assets (about US $20 million), less than RMB 645,000 (about US

15   $90,000) in bank deposits was actually frozen due to insufficient funds in the identified accounts.

16   Therefore, unless Applicants are able to identify and freeze additional bank accounts or other

17   assets, there is a serious risk that Applicants will be unable to collect the amount awarded from

18   Ciming, effectively nullifying both the arbitral award and the Hainan Court freezing order.

19        13.    Given that Ciming is a large hospital with a total paid-in capital of over RMB 57

20   million (about US $8 million), Ciming must have additional assets besides the amount that was

21   actually frozen in the three bank accounts identified by HRC-China. However, under Chinese

22   law and practice, an asset freezing order generally applies only to assets that are specifically

23   identified by the Claimant. HRC-China identified Ciming bank accounts that it became aware of

24   before the parties' relationship fell apart, but Ciming received HRC-China's application over two

25   weeks before the Hainan Court granted that application, so Ciming had ample time to transfer

26   funds to other accounts that were not known to HRC-China.

27        14.    The Hainan Court Asset Preservation Case is still pending. HRC-China is entitled

28   to submit additional evidence to the Hainan Court related to the asset freezing order, including

[01280016]        **Decl. of Liu Yang ISO Application for 1782 Discovery**        4

LIMNEXUS LLP

LIMNEXUS LLP

1   evidence obtained through the assistance of a U.S. court in proceedings under 28 U.S.C. § 1782.

2   Obtaining and submitting such evidence to the Hainan Court would not be contrary to any court

3   rule or to any restrictions on proof-gathering under Chinese law.  If Applicants identify additional

4   bank accounts or assets of Ciming as a result of discovery under  28 U.S.C. § 1782, and then

5   submit evidence of such additional assets to the Hainan Court, the Hainan Court will likely take

6   steps to freeze those additional assets.

7         15.   As noted above, HRC-China also submitted an Application for Injunctive

8   Measures to the Hainan Court, which seeks a preliminary injunction prohibiting Ciming from

9   using or transferring the tangible and intangible property at the IVF Center that Ciming had

10  unlawfully seized.   Attached as Exhibit 3 hereto is a modified version of HRC-China's

11  Application for Injunctive Measures, which includes the original Chinese with an added English

12  translation. That application is still pending and has not been decided by the Hainan Court.

13        C.   **Yihan Hu, Xiaohong Han, Bo Hu, and the Hu-Han Entities Are Not Parties**

14  **to the CIETAC Arbitration or Hainan Court Asset Preservation Case, But Are Likely to Have Relevant Information**

15        16.   The parties to the CIETAC Arbitration do not include Yihan Hu, Xiaohong Han

16  and Bo Hu, nor do they include Hu-HanOne LLC ("Hu-HanOne"), Hu-HanTwo LLC("Hu-

17  HanTwo"), and Hu-HanThree LLC ("Hu-HanThree") (collectively, the "Hu-Han Entities").

18  Accordingly, there is no way for the Arbitral Tribunal in the CIETAC Arbitration to require Yihan

19  Hu, Xiaohong Han, Bo Hu, or the three Hu-Han Entities to participate or to provide evidence in

20  those proceedings.

21        17.   Similarly, the parties to the Hainan Court Proceedings do not include Yihan Hu,

22  Xiaohong Han and Bo Hu, nor do they include the three Hu-Han Entities.  Accordingly, there is

23  no way for the Hainan Court to require Yihan Hu, Xiaohong Han, Bo Hu, or the three Hu-Han

24  Entities to participate or to provide evidence in those proceedings.

25        18.   While Yihan Hu, Xiaohong Han and Bo Hu are not parties to the CIETAC

26  Arbitration or the Hainan Court Proceedings, they are mentioned repeatedly in the RFA as the

27  principals of Ciming,    For example, in September 2017, Yihan Hu signed the Collaboration

28  Agreement as Ciming's Legal Representative, as well as a Letter of Undertaking that required

Ciming to provide notice of any transfer of Ciming's equity and to obtain HRC-Chins's prior approval of any change in control.  (RFA ¶¶ 6.2, 7.2.)  Despite that Undertaking Yihan Hu transferred her 95% equity stake in Ciming to her mother, Xiaohong Han, in December 2017, without providing prior notice or obtaining HRC-China's approval.  (*Id.* ¶ 10.1.)

19.    Xiaohong Han has owned 95% of Ciming since that illegal transfer and appears to have been the driving force between Ciming's repeated breaches of the Collaboration Agreement. (*Id.* ¶¶ 10.1, 10.2.)  Bo Hu, Yihan Hu's father, signed a Letter of Intent in December 2016 that set forth the basic terms of the Collaboration Agreement, and is the majority owner of Hainan Cixin Industrial Co., Ltd., which "owns" the premises where Ciming is located.[3]  (*Id.* ¶¶ 6.2, 6.5.)  Bo Hu agreed in March 2017 to acquire a 10% equity stake in Applicant HRC-China, and agreed in April 2018 to contribute 10% of the initial project funding. (*Id.* ¶¶ 6.7, 8.1.)

20.    Because Yihan Hu, Xiaohong Han, and Bo Hu were heavily involved in the underlying events as Ciming's principals, they should have information relevant to the CIETAC Arbitration, such as the negotiation, performance, and breach of the Collaboration Agreement; and should have also information relevant to the Hainan Court Proceeding, such as the current location of Ciming's assets and the extent to which Ciming's assets have been transferred to other Ciming bank accounts or to other entities under the control of Ciming's principals.

21.    The three Hu-Han Entities should also have information relevant to the CIETAC Arbitration and the Hainan Court Proceeding.  The RFA states that Xiaohong Han and Yihan Hu are "planning to establish a similar reproductive hospital in California, with the know-how, intellectual property and other highly confidential information misappropriated from the Claimants."  (RFA ¶ 11.2)   That plan is evidenced by documents that I understand are being submitted with the accompanying Declaration of Grant L. Kim, which describe the business of Hu-HanTwo as "Fertility Center," and show that Bo Hu and Xiaohong Han have applied (through Hu-HanTwo) for approval of a real estate development project in Menlo Park that includes

---

[3] "Ownership" in this context refers to a long-term land use right, since all real estate in China is owned by the government.

LimNexus LLP

medical offices, which is managed by Yihan Hu and uses land purchased by Hu-HanTwo. The Hu-Han Entities should have information concerning any plan to set up a fertility center near Stanford that may use intellectual property that Ciming illegally obtained from Applicants.

22.     Finally, the three Hu-Han Entities should also have information relevant to the Hainan Court Asset Preservation Case.  Real estate documents attached to the Kim Declaration show that the Hu-Han Entities have recently purchased commercial and residential real estate in Menlo Park for a total price of over $30 million.  Documents in the custody of the three Hu-Han Entities, Yihan Hu, Bo Hu, and/or Xiaohong Han may show that some or all of those funds were transferred from Ciming, which did not receive reasonably equivalent compensation.  If so, that would support a claim that Ciming fraudulently transferred assets to the Hu-Han Entities in an attempt to render an arbitral award ineffective.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Declaration is executed on November 8, 2019 in Shanghai, China.

_____
Liu Yang

# EXHIBIT 1

{01251856}

**Request for Arbitration**
**(Translation for Internal Reference)**

## TABLE OF CONTENTS

PART I – OVERVIEW .........................................................................................1
  1  Case Summary ........................................................................................1

PART II – PARTIES, ARBITRATION AGREEMENT, AND RELIEF ...............2
  2  The Parties: ............................................................................................2
  3  Arbitration Agreement:...........................................................................2
  4  Seat of Arbitration, Applicable Law, Language of Arbitration and Appointment of Arbitrator: ........................................................................3
  5  Relief Sought by Claimants: ...................................................................3

PART III – SUMMARY OF THE DISPUTE .....................................................4
  6  Formation of the Business Relationship: ................................................4
  7  The Collaboration Agreement:................................................................6
  8  The Supplementary Agreements: ...........................................................8
  9  The Performance of the Collaboration Agreement: ...............................8
  10  The Respondent Breached the Collaboration Agreement: ....................9
  11  Claimant is Facing Imminent and Irreparable Harm: ...........................12

PART IV – CAUSE OF ACTION ....................................................................14
  12  Breach of Contract: .............................................................................14
  13  Infringement of the Claimants' Rights by Tortious Acts: ....................15
  14  Reservation of Rights .........................................................................16

PART I – OVERVIEW

**1   Case Summary**

1.1.   This arbitration arises from a dispute over a Collaboration Agreement concerning a medical center in Hainan, China, which provides In Vitro Fertilization and other reproductive services (the "**IVF Center**").

1.2.   Pursuant to the Collaboration Agreement with Respondent, Claimants invested over US $10 million to build and equip the IVF Center at Respondent's hospital in Hainan, and to enable Respondent to obtain an extremely valuable license to provide IVF services (the "**IVF Approval**"). After the license was granted in March 2019, Respondent carried out a series of activities in order to take possession of the IVF Center and the IVF Approval, and to push Claimants out of the management and operation of the IVF Center.

1.3.   Respondent prevented Claimants from operating the IVF Center by cutting off electricity supply, changing the locks, and physically preventing Claimants' staff from entering the IVF Center. After that, Respondent started providing IVF services, using the facility and equipment that Claimants built and purchased, as well as operating manuals and training materials that contain intellectual property and know-how that Claimants licensed to Respondent. Respondents also sent a letter to Claimants and purported to terminate the Collaboration Agreement even though it has no rights to terminate the agreement. By sending this letter, Respondent has shown its true intention of disregarding the Collaboration, excluding Claimants from the IVF Center, and taking possession of Claimants' tangible and intangible property and the extremely valuable IVF Approval. Respondent has materially breached the Collaboration Agreement and infringed Claimant's legitimate interests.

1.4.   Claimants have filed this arbitration to obtain compensation for the damages suffered by Claimants, for the restitution of the tangible and intangible property that Respondent has wrongfully seized, as well as to obtain compensation for the extremely valuable IVF Approval that Respondent obtained exclusively relying on Claimants' investments and technical support, and related injunctive and declaratory relief.

PART II – PARTIES, ARBITRATION AGREEMENT, AND RELIEF

2     **The Parties:**

2.1.   The 1st Claimant, **HRC-Hainan Holding Company, LLC (hereafter, "HRC-Hainan")**, is a limited liability company incorporated under the laws of the State of Delaware, of the United States, with its registered address at 1679 S. Dupont Hwy., Suite 100, in the City of Dover, County of Kent, Delaware, 19901. The sole director of the 1st Claimant is Dr. John Gorden Wilcox, a U.S. Citizen.

2.2.   The 2nd Claimant, **D&W Holding Company, LLC (hereafter, "D&W")**, is a limited liability company incorporated under the laws of the State of Delaware, of the United States, with its registered address at 2140 S. Dupont Highway in the City of Camden, County of Kent, Delaware, 19934. The sole director of the 2nd Claimant is Dr. John Gorden Wilcox, a U.S. Citizen.

2.3.   The 3rd Claimant, **Hainan HRC Hospital Management and Consulting Co., Ltd. (hereafter, "HRC-China")**, is a limited liability company incorporated under the laws of the People's Republic of China, with its registered address at Room 308, No. 107 Coast Street, Bo'ao Town, Qionghai City, Hainan Province. The legal representative of the 3rd Claimant is Dr. John Gorden Wilcox, a U.S. Citizen (hereafter, "**Dr. Wilcox**").

2.4.   The Respondent, **Ciming Bo'ao International Hospital Co., Ltd. (hereafter, "Ciming")** (formerly Hainan Bo'ao Ciming Aoya Hospital Co., Ltd.), is a limited liability company incorporated under the laws of the People's Republic of China, with its registered address at Room 308, No. 107 Coast Street, Bo'ao Town, Qionghai City, Hainan Province. The legal representative of Respondent is Xiaohong Han.

3     **Arbitration Agreement:**

3.1.   Effective September 10, 2017, the three Claimants and Respondent entered into a Collaboration Agreement. Article 15.2 of the Collaboration Agreement provides that:

3.2.   "If any difference of opinion or dispute among the Parties arises in relation to this Agreement, the Parties shall negotiate in good faith to resolve the matter or matters in dispute first. If the dispute cannot be resolved through friendly consultation, the dispute shall be settled by arbitration by China International Economic and Trade Arbitration Commission ("CIETAC") in accordance with the arbitration rules of CIETAC in effect at the time of application for arbitration."

4    Seat of Arbitration, Applicable Law, Language of Arbitration and Appointment of Arbitrator:

4.1.    Pursuant to Article 7 of the China International Economic and Trade Arbitration Commission (CIETAC) Arbitration Rules (effective as of January 1, 2015) ("**CIETAC Arbitration Rules**"), the place of the arbitration is Beijing, China.

4.2.    Pursuant to Article 15.1 of the Collaboration Agreement, the Agreement is governed by the substantive laws of the People's Republic of China.

4.3.    Pursuant to Article 81 of the CIETAC Arbitration Rules, the language of the arbitration shall be Chinese.

4.4.    Pursuant to Article 25 of the CIETAC Arbitration Rules, the arbitral tribunal shall be composed of three arbitrators. Pursuant to Article 27, Claimants and Respondent shall each nominate, or entrust the Chairman of CIETAC to appoint, an arbitrator, within fifteen days from the date of receipt of the Notice of Arbitration. In addition, the parties shall jointly nominate, or entrust the Chairman of CIETAC to appoint, the third arbitrator, who shall act as the presiding arbitrator.

5    Relief Sought by Claimants:

Claimants hereby seek the following relief:

(1)  A DECLARATION that the Collaboration Agreement is terminated.

(2)  An ORDER requiring Respondent to pay back to HRC-Hainan, (the 1st Claimant) and D&W (the 2nd Claimant) the Initial Funding of USD 1,187,555.28.

(3)  An ORDER requiring Respondent to pay to HRC-Hainan and D&W interest based on the amount of the Initial Funding accrued at the annual rate of 6.614% from the date of funding up to the date of the arbitral award.

(4)  An ORDER requiring Respondent to pay to HRC-China (the 3rd Claimant): a) the design, renovation, construction and labor costs of the IVF Center in the amount of RMB 30,910,237.41; b) the costs of purchasing medical equipment, electronic equipment and office equipment in the amount of RMB 6,024,642.83; and c) the costs of purchasing consumable items and advertising materials, utility costs, salary costs, and social security costs, in the amount of RMB 5,879,768.44.

(5)  An ORDER requiring Respondent to pay to HRC-Hainan, (the 1st Claimant), D&W (the 2nd Claimant) and HRC-China (the 3rd Claimant) the value of the approval for the trial operation of human-assisted reproductive technology, in the amount of at least RMB 100,000,000.00, with the total amount of such

value to be determined later by assessment.

(6) A DECLARATION that HRC-China (the 3rd Claimant) has ownership of the furniture, devices, machines, equipment, instruments and supplies in the IVF Center, as well ownership of all intellectual property, including trademark rights, located in, associated with, used by, or necessary to the operation of the IVF Center, including the operation manuals, the rules and policies, the laboratory manuals and the pricing strategies.

(7) An ORDER requiring Respondent to return the aforesaid tangible physical and intellectual property to HRC-China (the 3rd Claimant).

(8) An ORDER requiring Respondent to compensate HRC-China (the 3rd Claimant) for the replacement cost value of the properties, if Respondent cannot return all or part of such properties.

(9) An ORDER requiring Respondent to cease and desist from infringing upon Claimants' intellectual property rights, including but not limited to patents, copyrights, trade secrets, trademarks and others, and to compensate all of Claimants for all loss or damage that they have suffered in the past, continue to suffer, or will suffer in the future.

(10) An ORDER requiring Respondent to bear all of Claimants' attorney fees incurred for this case, which are currently estimated as of RMB 495,646.40.

(11) An ORDER requiring Respondent to compensate all of Claimants for any and all amounts paid to CIETAC, asset preservation fees, litigation preservation liability insurance premiums, notarization and legalization costs, translation fees, traveling expenses and all other costs incurred for this case (based on the final cost incurred, Claimants will provide evidence of such costs later in the proceedings).

The total amounts sought by Claimants for items (2) to (5) and (10) are USD 1,187,555.28 and RMB 143,310,295.08.

**PART III – Summary of the Dispute**

6    **Formation of the Business Relationship:**

6.1.    HRC-Hainan (the 1st Claimant) and D&W (the 2nd Claimant) are Delaware registered companies that provide funding for medical reproductive and fertility health services. Dr. Wilcox and other doctors previously set up Huntington Reproductive Center Medical Group, doing business as HRC Fertility, to operate a fertility health clinic operation ("**HRC**") in the U.S. For more than 20 years, HRC

4

has introduced and perfected new fertility treatments and procedures. HRC achieved impressive fertility success rates with its cutting edge reproductive technology, and HRC became one of the top fertility clinic operations in the U.S. HRC has been extremely successful in serving patients from mainland China and has established a sound reputation in China. In order to better serve Chinese patients who are unable to come to the U.S. due to visa and other reasons by providing on-the-ground service in China, Dr. Wilcox and other doctors set up HRC-Hainan (the 1st Claimant) and D&W (the 2nd Claimant).

6.2.    In 2016, through the introduction of Xuyang Deng, a shareholder of D&W (the 2nd Claimant), HRC-Hainan (the 1st Claimant) and D&W (the 2nd Claimant) engaged in discussions with Respondent, which was represented by Yihan Hu and Bo Hu. Bo Hu is the legal representative and executive director of Hainan Cixin Industrial Co., Ltd. ("**Cixin**"), and he is also the majority shareholder of Cixin, the company that owns the premises where Ciming is located. Yihan Hu was the legal representative of Respondent and owned 95% of the shares in Respondent when the Collaboration Agreement was being negotiated with Dr. Wilcox in 2017. Yihan Hu signed the Collaboration Agreement on behalf of Respondent as its legal representative.

6.3.    Yihan Hu and Bo Hu represented to HRC-Hainan and D&W that Yihan Hu owned a hospital in the Hainan Bo'ao Lecheng International Medical Tourism Pilot Zone, and that they wanted to operate a fertility health and infertility department in the hospital but that they did not have the reproductive technology, the personnel or the funds to set up a fertility health and infertility department.

6.4.    Respondent represented that Chinese law allowed HRC-Hainan (the 1st Claimant) and D&W (the 2nd Claimant) to independently manage and operate the IFV Center in their hospital. Respondent also promised that HRC-Hainan (the 1st Claimant) and D&W (the 2nd Claimant) would take full charge of operating and managing the IFV Center, and that Respondent would only charge them 10 percent of the IFV Center's total income and a small amount of rent.

6.5.    These agreements were memorialized in a Letter of Intent of 8 December 2016, which was signed by both Yihan Hu, as the authorized representative of Respondent, and by Bo Hu.

6.6.    In reliance upon the representations and promises made by Respondent, HRC-Hainan (the 1st Claimant) and D&W (the 2nd Claimant) decided to make the investment and to provide the technical support in order to set up and operate the IVF Center.

6.7.    In order to facilitate cooperation, HRC-Hainan (the 1st Claimant), D&W (the 2nd Claimant) and Beijing Hankang Management Consultancy Center (Limited Partnership) ("**Hankang**"), jointly established the 3rd Claimant: Hainan HRC Hospital Management and Consulting Co., Ltd. HRC-Hainan (the 1st Claimant),

D&W (the 2nd Claimant) and Hankang hold 55%, 35% and 10% of the shares in HRC-China (the 3rd Claimant), respectively. Hankang is a limited partnership incorporated under the laws of the People's Republic of China, with its registered address at Building 2, No. 12 Xidawang Road Jia, Chaoyang District, Beijing. The managing partner of Hankang is Beijing Ciji Heal Management Co., Ltd, who has appointed Bo Hu as its representative.

6.8. After HRC-Hainan, D&W and Hankang set up HRC-China, Claimants and Respondent entered into the Collaboration Agreement on 10 September 2017. The parties agreed that HRC-China would manage and operate the IVF Center, while Respondent would only provide ancillary assistance to meet the regulatory requirements of Chinese law, and regulations of the Hainan provincial government, in particular.

## 7   The Collaboration Agreement:

7.1. As a comprehensive record and representation of the parties' consensus, the three Claimants and Respondent entered into the Collaboration Agreement, which provided that HRC-China (the 3rd Claimant) shall be responsible for operating and managing the IVF Center, as well as providing services to the IVF Center, including personnel management, promotion and advertisement, technical support, purchasing management, logistics service and other management services. Specific provisions in the Collaboration Agreement include:

(1)   Respondent shall make every effort to open the IVF Center no later than 1 October 2018 ("**Deadline for Opening**"), and it shall obtain all approvals, licenses, and permits necessary for the operation of the IVF Center before the Deadline for Opening. (Article 2.3)

(2)   HRC-China (the 3rd Claimant) has the sole discretion over purchasing medical equipment to be used in the IVF Center, and such costs shall be borne by HRC-China. Respondent shall cooperate with importing and purchasing such equipment on behalf of HRC-China. Even if such equipment is recorded on the books of Respondent, "it shall belong to HRC China *de facto*," Upon termination of the Collaboration Agreement, ownership of such equipment "shall automatically be transferred to HRC-China," unless otherwise agreed by HRC-China. (Article 2.3.4)

(3)   HRC-China (the 3rd Claimant) will be in charge of managing the staff working for IVF Center, including but not limited to determining the organization structure, management team, headcount, recruitment, training, remuneration system, work standard/procedure, performance assessment, position transfer, etc. … HRC-China (the 3rd Claimant) will have the exclusive right on the selection of said personnel and have exclusive right to determine the employment conditions. (Article 3.2)

(4) All "materials or activities for the promotion or marketing of the IVF Center shall be jointly determined by HRC-China (the 3rd Claimant) and CIMING (Respondent)." (Article 3.3)

(5) HRC-China (the 3rd Claimant) is responsible for providing free technical guidance and support to IVF Center, including determining and establishing the items of fertility treatment, treatment standards, standard operating procedures, and personnel training, etc. HRC-China (the 3rd Claimant) may, based on its discretion, provide personnel training to Respondent's personal, and the scope of trainees and training content is subject to the sole decision of HRC-China (the 3rd Claimant). (Article 3.4)

(6) Respondent shall open an independent general deposit account (the "**IVF Account**") specifically for the IVF Center. The IVF Account "will be exclusively managed and controlled by HRC-China (the 3rd Claimant)," which "shall have unlimited access to IVF Account for checking and cash flow management purposes." Respondent has the right to audit the account, but "is not allowed to transfer or deduct any payment from IVF Account by itself." (Articles 3.2, 3.5, 5.1.1, 5.1.2)

(7) Any system, software, guidance, instructions, handbook, model, procedures introduced by HRC-Hainan (the 1st Claimant) (itself, through HRC-China (the 3rd Claimant) or their employees), in relation to the IVF treatment or for the operation of the IVF Center shall be deemed as HRC-China's know-how, technology and trade secret. (Article 8.2.2) And Respondent "shall not, without prior written consent from HRC-China (the 3rd Claimant), use or permit any third party to use" the intellectual property "for any purposes". (Article 8.4)

(8) Any appendixes of this Agreement shall form an integral part of this Agreement. In the event of discrepancy between this Agreement and the appendixes, this Agreement shall prevail. (Article 16.1)

7.2. Respondent agreed in the Appendix 2.2 Letter of Undertaking to provide advance written notice of any proposed equity transfer in the Respondent before it took effect, and that "prior written approval of HRC China" shall be required for any transfer of "control" of Respondent. "Control" was defined as ownership of more than 50% of Respondent's shares or the power to direct the Respondent's management or policies through such ownership or other measures. (Appendix 2.2, paragraph 2.)

7.3. On 13 September 2017, Beijing Mengmei Technology Co., Ltd., D&W (the 2nd Claimant) and Respondent executed a Trademark License Agreement, referred to as Annex 3.2 of the Collaboration Agreement. On the same day, HRC-Hainan (the 1st Claimant) and Respondent executed a Know-How License Agreement,

attached as Annex 3.3 to the Collaboration Agreement. Both agreements provide:

(1)    If the Collaboration Agreement is terminated, the license agreements shall be terminated on the same date. (Annex 3.2, Article 5.1.2; Annex 3.3, Article 6.1.2.)

(2)    Each party has the right to seek "temporary or permanent injunctive or other similar relief in any court or other authority of competent jurisdiction," with regard to infringement of the licensed rights, notwithstanding the parties' agreement to resolve disputes by arbitration. (Annex 3.2, Article 10.3; Annex 3.3, Article 11.3.)

**8    The Supplementary Agreements:**

8.1.    On 21 April 2018, Claimants and Bo Hu concluded the SUPPLEMENTARY AGREEMENT TO THE COLLABORATION AGREEMENT. Under the supplementary agreement, HRC-Hainan (the 1st Claimant), D&W (the 2nd Claimant) and Bo Hu are obliged to pay a total of USD 1,087,026.48 as Initial Funding to Respondent proportionally, in which HRC-Hainan will provide USD 597,864.56, D&W will provide USD 380,459.27, and Bo Hu will provide the rest: USD 108,702.65. Taking into consideration the current foreign exchange system in China, transfer of Initial Funding to the IVF Account of Respondent could take time and may have delayed the original construction plan. Therefore, HRC-Hainan (the 1st Claimant) and D&W (the 2nd Claimant) paid the Initial Funding to Respondent by transferring money to Bo Hu's bank account. After the execution of the supplementary agreements, the HRC-Hainan transferred the entire amount of the Initial Funding, USD 1,187,555.28, to Bo Hu.

8.2.    On 3 May 2018, HRC-China (the 3rd Claimant) and Respondent concluded the Supplementary Agreement on the Payment of Initial Funding and the Purchase of Equipment. Since Respondent had received the Initial Funding from Mr. Bo Hu, Respondent confirmed that HRC-China was not required to pay the Initial Funding to the IVF Account. Respondent also confirmed that the ownership of the equipment of the IVF Center belongs to the HRC-China (the 3rd Claimant) *de facto*.

**9    The Performance of the Collaboration Agreement:**

9.1.    After signing the aforementioned agreements, the Claimants fulfilled their contractual obligations and made substantial investments for the construction of the IVF Center. As stated above, HRC-Hainan (the 1st Claimant) and D&W (the 2nd Claimant) had paid the Initial Funding in the amount of USD 1,187,555.28. HRC-China (the 3rd Claimant) had also paid RMB 42,787,470.68 to build the IVF Center and to acquire medical equipment for the IVF Center, which include the

expenses below:

(1)   the design, renovation, construction and labor costs, etc., for the IVF Center totaling RMB 30,883,059.41;

(2)   the costs of purchasing medical, electronic and office equipment totaling RMB 6,024,642.83;

(3)   Costs for consumables, advertising materials, utilities, salaries, and social security costs, etc., in the amount of RMB 5,879,768.44.

9.2.   More importantly, the IVF Center relied heavily on the Claimants' investments and exclusively on technical support from the Claimants in obtaining the IVF approval. Respondent had no experience with performing human assisted reproduction or related procedures. The Respondent relied entirely on the vast experience of Claimants to obtain the IVF approval to perform the first, second, and third generation IVF operations. For the purpose of applying for the IVF approval, the Claimants collected and compiled a vast amount of information and prepared hundreds of application documents. The Claimants also provided Standard Operating Procedure ("**SOP**") manuals, which contain precise steps for performing such operations. Such SOP manuals are highly valuable proprietary information which reflect the know-how and experiences that HRC has acquired through decades of practice. In addition, Claimants had sent specialists including an embryologist to travel to Hainan to prepare the IVF Center for examination by the regulators and to answer questions from the regulators.

9.3.   As a result of the best effort by the Claimants to assist the Respondent to obtain the IVF approval, Respondent eventually obtained such approval to perform the first, second, and third generation IVF operations on 7 March 2019. This approval was extremely valuable and could bring huge benefit to the IVF Center, because only a few hospitals countrywide have the qualification to perform the third generation IVF operations. Indeed, Xiahong Hong, the current legal representative of Respondent, stated in a WeChat message that she sent to Dr. Wilcox on 9 May 2019 that Respondent is "the only private medical institution that is granted license for the third generation IVF operations in China". Given that the Claimants made substantial investments and provided intellectual property to the IVF Center, invested its best effort in applying for the IVF approval, and the IVF Center obtained the IVF approval exclusively relying on the Claimants' investments and technical support, the Claimants are entitled to the benefits arising from their contributions and the IVF approval.

## 10   The Respondent Breached the Collaboration Agreement:

10.1.   On 18 December 2017 — just two months after the Collaboration Agreement was

signed — Yihan Hu transferred 95% of the shares in the Respondent to Xiaohong Han. On the same day, Xiaohong Han replaced Yihan Hu to become the legal representative and Executive Director of the Respondent. However, Respondent did not notify the Claimants of such share transfer in advance, nor did it obtain prior written approval from HRC-China (the 3rd Claimant), even though Yihan Hu has promised to do so. The transfer of shares has materially violated Appendix 2.2 of the Collaboration Agreement. As a result of the share transfer, Xiaohong Han took over the Respondent. Under the control of Xiaohong Han, the Respondent carried out a series of orchestrated and illegitimate actions.

10.2.  After the Respondent obtained the IVF approval on 7 March 2019, the Respondent disregarded the Collaboration Agreement under the control of Xiaohong and adopted a series of orchestrated and illegitimate actions to take possession of the IVF Center, push out the Claimants from the operation and management of the IVF Center. The Respondent's breaches of contract include but is not limited to:

(1)  The Respondent breached its agreement with the Claimants regarding jointly determining on the promotion and marketing material of the IVF Center by unilaterally determining the promotion of a Global Fertility Genetics Company ("**GFG Company**") which engages in fertility health and IVF businesses, and inviting the so-called "American doctors" to provide medical services at the IVF Centre. Such promotional activities materially breach Article 3.3 of the Collaboration Agreement, which resulted in damage to the image of the IVF Center and the Claimants, and affected the normal operation of the IVF Center;

(2)  The Respondent controlled the security token of the IVF Account, which confers to it the ability to withdraw funds from the account, even though the Collaboration Agreement specified that the IVF Account "will be exclusively managed and controlled by the third Claimant," and that Respondent only has the right to monitor the account from legal and compliance perspectives. In addition, it did not allow Respondent to transfer any payment from IVF Account. ;

(3)  The Respondent also breached the provision of the Collaboration Agreement by refusing to hand over the security token to the third Claimant, in violation of the articles of the Collaboration Agreement concerning the IVF account;

(4)  The Respondent failed to fulfill its contractual obligations to open the IVF Center by 1 October 2018, the Deadline for Opening. After the IVF Center finally satisfied the conditions for opening on 7 March 2019, the Respondent sought to disregard the Collaboration Agreement and took actions

preventing operation of the Center's medical equipment, such as cutting off the electricity supply, to prevent the IVF Center from opening. Those actions were in violation of Articles 2.2, 2.3 and 4.2 of the Collaboration Agreement. Such acts constituted breaches of contract by the Respondent, which have resulted in great losses to the Claimants;

(5)   After the Respondent obstructed the IVF Center from opening, the Respondent went further and took measures to confiscate the third Claimant's medical equipment and devices under the false pretenses of conducting an inventory check. The Respondent showed its malicious intention to disregard Claimants rights, to operate the IVF Center on its own, and to take possession of the IVF Center's assets by force, all in violation of the promises and representations made to Claimants, and constituting material breach of Articles 2.3, 4.2, and possibly other terms of the Collaboration Agreement;

(6)   On 4 July 2019, the Respondent even instructed its security personnel to stop the employees of the IVF Center from entering the facility, changed the door locks and prevented the use of the medical equipment of the IVF Center. As a result, the Claimants are completely excluded from the operation and management of the IVF Center. Through these illegal actions, the Respondent seized control of the IVF Center and prevented the IVF Center from operating normally and generating revenues to cover its operating costs. The Respondent has materially breached the agreement that HRC China will take full charge of operating and managing the IVF Center;

(7)   After the Respondent took over the IVF Center, the Respondent began to make unilateral changes to the pricing strategy, marketing method, and workflow of the IVF Center, and used the medical equipment which belongs to the third Claimant, and even invited the so-called "American doctors" to provide medical services at the IVF Center. These acts materially violated the agreements that the IVF Center was to be run and managed, and the medical staff be selected by the third Claimant, free from interference from the Respondent. These acts constituted a fundamental breach of contract. In addition, the practice by the so-called "American doctors", that are not registered in China, at the IVF Center violated the Law of the People's Republic of China on Medical Practitioners, the Protocols of Management of Medical Institutions, etc.; and

(8)   Then, on 1 August 2019, the Respondent sent a Lawyer's Letter to the Claimants requesting to terminate the Collaboration Agreement. However, the Respondent has no rights to terminate the Collaboration Agreement under either the Collaboration Agreement or the PRC Contract Law. This Lawyer's Letter only proves the Respondent's non-compliance and non-performance of the Collaboration Agreement, and showed its true intention:

blatantly disregard of the Collaboration Agreement in order to exclude the Claimants from the IVF Center, and take possession of the Claimants' investments, medical equipment and the IVF approval, after the Claimants has invested more than USD 10 million and contributed their know-how and intellectual properties to obtain the extremely valuable IVF approval.

10.3. The aforementioned breaches of contract by the Respondent under the control of Xiaohong Han clearly showed the illegal purposes by the Respondent to disregard the Collaboration Agreement, to prevent the Claimants to run and manage the IVF Center, and to take sole possession of the IVF Center. Not only did the Respondent breached the principles of good faith and fairness, but it also fundamentally breached the Collaboration Agreement, infringing the legitimate interests of the Claimants, which has defeated the purpose of the Collaboration Agreement and resulted in significant damages suffered by the Claimants.

## 11   Claimant is Facing Imminent and Irreparable Harm:

11.1. As aforesaid, the Claimants provided expensive professional medical equipment and invested substantial sums in the construction and set-up of the IVF Center. However, after the construction of the IVF Center was completed and the IVF Center obtained government approval for the trial operation of human-assisted reproductive technology, the Respondent not only failed to make an effort to open the Center, but also refused to perform its contractual obligations by cutting off the water and electricity supply and preventing the staff of HRC-China (the 3rd Claimant) from entering the IVF Center, which violated the implied covenant of good faith and deviated from the contracting parties' mutual purpose in entering into the Collaboration Agreement. In addition, according to the Collaboration Agreement, Hainan-China has ownership of the medical devices, equipment and other assets at the IVF Center. The Respondent conducted its so-called inventory check on the assets without obtaining prior approval from Hainan-China The IVF Center was established within the Respondent's building, making it easier for the Respondent to take over and transfer the Center's assets. The above-mentioned facts prove that the Respondent intended to take sole possession and control of all the medical equipment and the IVF Center. As Hainan-China has lost physical control of the Center's assets, and the Respondent might sell or transfer the assets, Claimants have already suffered substantial losses and harm, and are facing imminent further harm. Claimants request that the Respondent be ordered to cease and desist from any infringement.

11.2. In addition to the investments made by the Claimants, the Claimants also provided their intellectual property, trade secrets, know-how, and other highly confidential information related to the Claimants' medical technologies, to the Respondent, including the Claimants' designs, manuals, policies and procedures etc. The Respondent's procurement (in the name of the Respondent's Hospital name) of the government's approval relied entirely on technical support from the

12

Claimants. However, after Respondent obtained the approval from the government agencies, the Respondent started to promote the Center, while operating it in cooperation with doctors from its business partner, a hospital located in New York. Given that the Respondent itself does not have the capacity or qualifications to master or ethically, competently or responsibly apply the required reproductive technology, it is likely that the Respondent may have provided the Claimant's reproductive technology and other confidential information to the doctors in New York. The shareholder of the Respondent, Xiaohong Han, and its former Chairwoman, Yihan Hu, are also planning to establish a similar reproductive health hospital in California, with the know-how, intellectual property and other highly confidential information misappropriated from the Claimants. The Claimants are facing the imminent threat of having its intellectual property and confidential information disclosed to third parties by the Respondent, which will result in irreparable harm to the Claimants. Both the Trademark License Agreement and the Know-how License Agreement contain clauses that permit the Claimants to seek temporary or permanent injunctive relief notwithstanding the arbitration agreement.

11.3.   It also came to HRC-China's (the 3rd Claimant) attention that the Respondent may be unable to pay off its outstanding debts, and that the Respondent might sell the assets of HRC-China in order to clear the debts. If that is true, HRC-China will suffer further irreparable harm as a result. Particularly, the medical equipment used in the IVF Center has been adjusted in order to obtain government approval. If the Respondent sells the equipment, the entire IVF Center will not be functional and the approval could be revoked. Considering that the Respondent's likely disposition of the assets of HRC-China will result in irreparable harm, HRC-China is now facing immediate and severe harm. Given that the Respondent has no capacity to pay off its debts, a final award would be inadequate to spare HRC-China from irreparable harm. Meanwhile, the Claimants have a reasonable probability of success on the merits of the case and its claims are likely to be upheld by the arbitral tribunal in light of their factual and legal bases. As part of this Request for Arbitration, the Claimants also submit an Application for immediate, interim relief: specifically, an Order commanding the transfer of custody to Claimants of their assets at the IVF Center, and prohibiting the Respondent from transferring, wasting or otherwise disposing of any and all of Respondent's assets that could be used to compensate Claimants for the harm caused by Respondent.

11.4.   In addition, once the Respondent took over the IVF Center and HRC-China (the 3rd Claimant)'s medical equipment by cutting off electricity supplies, prohibiting the Claimants' staff from entering the IVF Center, and changing locks, etc. The Respondent unilaterally announced to the public that the IVF Center would start running and the price and scope of its services. The Respondent also invited the so-called "American doctors" to the IVF Center for examinations between 31 July and 2 August. Respondent once again breached the Collaboration Agreement in which it was agreed that the parties shall jointly decide the marketing materials,

that the Respondent shall not interfere with the pricing strategy of the IVF Center, that HRC China has the exclusive right on the selection of the medical staff of the IVF Center, and that shall take full charge of the operation and management of the IVF Center. The Respondent also infringed HRC-China (the 3rd Claimant)'s ownership over the medical equipment at the IVF Center. Meanwhile, the Respondent hired unregistered and unqualified foreign personnel to provide medical service at the IVF Center, which constitutes a material violation of the Protocols of Management of Medical Institutions, Law of the People's Republic of China on Medical Practitioners and so forth. As stated above, Respondent has materially breached the Collaboration Agreement by excluding the Claimants from the IVF Center, taking possession of the third Claimant's medical equipment and the IVF approval, hiring the so-call "American doctors" to provide medical services at the IVF Center and sending the aforementioned Lawyer's Letter, etc.

## PART IV – CAUSE OF ACTION

**12  Breach of Contract:**

12.1.   On 18 December 2017, Yihan Hu transferred 95% of the shares in the Respondent to Xiaohong Han without obtaining prior approval from the HRC-China (the 3rd Claimant), which was in violation of Annex 2.2 the Collaboration Agreement. Article 107 of the PRC Contract Law provides that, "*[w]here one of the parties does not perform a contractual obligation, or does not perform a contractual obligation as agreed, the said party shall assume its liability for breach of contract by providing ongoing performance, adopting remedial measures, or paying compensatory damages, etc.*" Pursuant to Article 10.2 and Article 11.1.2 of the Collaboration Agreement, and Article 107 of the PRC Contract Law, etc., the Claimants are entitled to terminate the Collaboration Agreement and recover damages.

12.2.   The Respondent unilaterally determined the contents of the promotional documents and advertising of the IVC Center and failed to use the name and image of the Claimants to promote the IVF Center, which is in violation of Article 3.3 of the Collaboration Agreement. Pursuant to Article 10.2 and Article 11.1.1 of the Collaboration Agreement, and Article 107 of the PRC Contract Law, etc., the Claimants are entitled to terminate the Collaboration Agreement and recover damages.

12.3.   The Respondent interfered with the operation of the IVF Center by unilaterally changing the pricing strategy, marketing methods and workflow of the IVF Center and demanding to control the IVF Account, which is in violation of Article 3.4 of the Collaboration Agreement. Pursuant to Article 10.2 and Article 11.1.1 of the Collaboration Agreement, and Article 107 of the PRC Contract Law, etc., the Claimants are entitled to terminate the Collaboration Agreement and recover

damages.

12.4.    The Respondent failed to open the IVF Center by 1 October 2018, and the Respondent sought to disregard the Collaboration Agreement and took actions to prevent the IVF Center from opening, which is in violation of Article 2.2, Article 2.3 and Article 4.2 of the Collaboration Agreement. Pursuant to Article 10.2 and Article 11.1.1 of the Collaboration Agreement, and Article 107 of the PRC Contract Law, etc., the Claimants are entitled to terminate the Collaboration Agreement and recover damages.

12.5.    The Respondent took over the IVF Center by force, operated the IVF Center on its own, and hired unregistered and unqualified foreign personnel to provide medical service at the IVF Center between 31 July and 2 August, which is in violation of Article 1.2, Article 3.2 and Article 3.3 of Collaboration Agreement, and constitutes material violation of the Protocols of Management of Medical Institutions, Law of the People's Republic of China on Medical Practitioners and so forth. Pursuant to Article 10.2 and Article 11.1.1 of the Collaboration Agreement, and Article 107 of the PRC Contract Law, etc., the Claimants are entitled to terminate the Collaboration Agreement and recover damages.

## 13   Infringement of the Claimants' Rights by Tortious Acts:

13.1.    The Respondent wrongfully took possession of the IVF Center's assets and all intellectual property, including the operation manuals, the rules and policies, the laboratory manuals and the pricing strategies, etc., which is in violation of Article 2.3 and Article 4.2 of the Collaboration Agreement, and constitutes an infringement of HRC-China's (the 3rd Claimant's) contractual and property rights. Article 34 of the PRC Property Law provides that, "*A right holder may demand a party with no rights of possession to an immovable property or a movable property to return the original property.*" Pursuant to Article 8.6, Article 10.2 and Article 11.1.1 of the Collaboration Agreement, Article 107 of the PRC Contract Law, and Article 34 of the PRC Property Law, etc., the Claimants are entitled to terminate the Collaboration Agreement, recover damages, declaratory relief that HRC-China (the 3rd Claimant) is the rightful owner all of the assets at the IVF Center, and requiring the Respondent to return the aforesaid properties to the HRC-China (the 3rd Claimant). The Respondent shall compensate HRC-China (the 3rd Claimant) for the amount equivalent to the purchase price of such properties if the Respondent cannot return all or part of such properties.

13.2.    The Respondent may have disclosed the Claimants' confidential information to third parties, which is a violation of Article 8.4 of the Collaboration Agreement, and constitutes an infringement of the Claimants' privacy and intellectual property rights. Article 21 of PRC Tort Law provides that, "*Where a tortious act has compromised the personal safety or property safety of others, the infringed party(ies) may request that the tortfeasor(s) bear tort liability such as cessation of*

*tortious act, elimination of obstruction, elimination of danger, etc.*" Pursuant to Article 10.2 and Article 11.1.1 of the Collaboration Agreement and Article 21 of PRC Tort Law, etc., the Claimants are entitled to terminate the Collaboration Agreement, recover damages, and obtain an Order requiring the Respondent to stop infringing the Claimants' intellectual property rights.

## 14   Reservation of Rights

14.1.   The Claimants reserve the right to add to, expand or vary the claims made and relief sought in this Request for Arbitration, and to present further arguments and evidence, up to the date of the final award if necessary, with the permission of the Tribunal.

In light of the foregoing facts and grounds, in order to safeguard their legitimate rights, the Claimants file this Request for Arbitration in accordance with applicable laws and regulations. The Claimants respectfully request that the arbitral tribunal grant all the relief sought by the Claimants.

Yours faithfully,

China International Economic and Trade Arbitration Commission

1st **Claimant: HRC-Hainan Holding Company, LLC**

2nd **Claimant: D&W Holding Company, LLC**

3rd **Claimant: Hainan HRC Hospital Management and Consulting Co., Ltd**

Counsel: Charles Qin, Patrick Zheng, Mark Zhang, Yang Liu, Andrew Lu, Han Li

**Llinks Law Offices**

12 August 2019

16

# 仲 裁 申 请 书

## 目录

第一部分  争议概述 ...................................................................................................... 2

　　一、案情简介 ........................................................................................................ 2

第二部分  当事人、仲裁协议和仲裁请求 ................................................................ 3

　　二、当事人 ............................................................................................................ 3

　　三、仲裁协议 ........................................................................................................ 3

　　四、仲裁地、适用法律、仲裁语言及仲裁员的指定 ............................................ 3

　　五、仲裁请求 ........................................................................................................ 4

第三部分  争议情况 ...................................................................................................... 5

　　六、达成商业合作关系 ........................................................................................ 5

　　七、《合作协议》 ................................................................................................ 6

　　七、补充协议 ........................................................................................................ 8

　　八、《合作协议》的履行 .................................................................................... 8

　　九、被申请人违反《合作协议》 ........................................................................ 9

　　十、申请人面临急迫和不可挽回的损失 ............................................................ 11

第四部分  诉因 ............................................................................................................ 13

　　十一、违约 .......................................................................................................... 13

　　十二、侵权 .......................................................................................................... 14

　　十三、保留权利 .................................................................................................. 14

## 第一部分 争议概述

### 一、 案情简介

1.1 本仲裁案件涉及三申请人与被申请人在中国海南设立、管理和运营生殖健康及不孕不育部("IVF 中心")所引起的《合作协议》纠纷,该 IVF 中心提供生殖健康及其他生殖服务。

1.2 依据三申请人与被申请人签订的《合作协议》的约定,三申请人向被申请人位于海南的医院的投资超过 1000 万美元,以建设、装修 IVF 中心并购买医疗设备。三申请人还帮助被申请人获得了具有极高价值的人类辅助生殖技术试运营批复("IVF 批复")。

1.3 在被申请人获得该批复后,被申请人开始实施了一系列违约行为,以阻止三申请人按照协议约定管理和运营 IVF 中心,达到其霸占 IVF 中心和 IVF 批复的目的。被申请人通过切断供电、阻止三申请人的工作人员进入 IVF 中心以及更换门锁等方式,阻止三申请人参与 IVF 中心运营。

1.4 此后,被申请人单方使用三申请人建设的 IVF 中心、购买的医疗设备,利用三申请人提供的知识产权和操作手册等文件,于近期自行开始经营该中心。被申请人还在其无权解除《合作协议》的情况下,致函三申请人单方要求终止《合作协议》。被申请人已经暴露了其违法意图,即通过推翻协议约定、排除合作伙伴等方式,达到霸占三申请人有形、无形资产和 IVF 批复的违法目的。通过采取前述一系列违约行为,被申请人已经根本违反了《合作协议》,严重侵犯了三申请人的合法权益。

1.5 三申请人因此提起本案仲裁,要求被申请人赔偿三申请人的损失,返还被申请人非法侵占的三申请人的有形和无形资产,赔偿其完全依赖三申请人的投资和技术支持所获得的 IVF 批复的价值,以及寻求其他保全和确权性救济。

## 第二部分 当事人、仲裁协议和仲裁请求

二、 当事人

2.1　申请人一，**HRC-Hainan Holding Company, LLC**，是一家根据美国特拉华州法律设立的有限责任公司，其注册地址为 1679 S, Dupont Hwy., Suite 100, in the City of Dover, County of Kent, Delaware 19901。申请人一的独任董事为 John Gorden Wilcox，为美国公民。

2.2　申请人二，**D&W Holding Company, LLC**，是一家根据美国特拉华州法律设立的有限责任公司，其注册地址为 2140 S. Dupont Highway in the City of Camden, County of Kent, Delaware, 19934。申请人二的独任董事为 John Gorden Wilcox，为美国公民。

2.3　申请人三，**海南亨廷顿医院管理咨询有限公司**，是一家根据中华人民共和国法律设立的有限责任公司，其注册地址为海南省琼海市博鳌镇海滨街 107 号(201 室)。申请人三的法定代表人为 John Gorden Wilcox，为美国公民。

2.4　被申请人，**慈铭博鳌国际医院有限公司**(原名：**海南博鳌慈铭奥亚医院有限公司**)，是一家根据中华人民共和国法律设立的有限责任公司，其注册地址为海南省琼海市博鳌镇海滨街107号(308室)。被申请人的法定代表人为韩小红。

三、 仲裁协议：

3.1　申请人一、申请人二、申请人三(以下合称"三申请人")和被申请人于 2017 年 9 月 10 日签署的《合作协议》第 15.2 条约定：

3.2　"若各方就本协议产生不一致的意见或争议，各方应友好协商解决。如仍不能解决争议，则应当提交中国国际经济贸易仲裁委员会("贸仲委")依据申请仲裁时有效的贸仲委仲裁规则通过仲裁予以解决。"

四、 仲裁地、适用法律、仲裁语言及仲裁员的指定

4.1　根据中国国际经济贸易仲裁委员会(CIETAC)仲裁规则(自 2015 年 1 月 1 日起生效，"《CIETAC 仲裁规则》")第 7 条，本案仲裁地为中国北京。

3

4.2 根据《合作协议》第 15.1 条，本案《合作协议》由中华人民共和国法律管辖。

4.3 根据《CIETAC 仲裁规则》第 81 条，仲裁语言应为中文。

4.4 根据《CIETAC 仲裁规则》第 25 条，本案仲裁庭由三名仲裁员组成。第 27 条规定，申请人和被申请人应各自在收到仲裁通知后 15 天内选定或委托仲裁委员会主任指定一名仲裁员。第三名仲裁员由双方当事人在被申请人收到仲裁通知后 15 天内共同选定或共同委托仲裁委员会主任指定。不能共同选定的，由仲裁委员会主任指定首席仲裁员。

**五、 仲裁请求：**

(1) 裁决解除《合作协议》；

(2) 裁决被申请人向申请人一、申请人二赔偿启动资金 1,187,555.28 美元；

(3) 裁决被申请人向申请人一、申请人二分别支付自申请人一、申请人二支付启动资金支付之日起，至裁决作出之日止按照年利率 6.614%计算的利息；

(4) 裁决被申请人向申请人三赔偿其支付 IVF 中心的设计、装修、建设和劳务等费用人民币 30,910,237.41 元，购买医疗设备、电子设备和办公设备等费用人民币 6,024,642.83 元，支付试剂耗材费、宣传材料费、医院水电费、员工工资和社保等人民币 5,879,768.44 元；

(5) 裁决被申请人向申请人三赔偿 IVF 批复的价值，暂计人民币 100,000,000.00 元，具体金额以评估为准；

(6) 裁决确认 IVF 中心的家具、装置、机器、设备、物资以及承载三申请人知识产权和商标的物品，包括临床操作手册、规章制度、实验室操作手册、定价策略及检查项目等，属于申请人三所有；

(7) 裁决被申请人将前述实物及承载知识产权的物品返还于申请人三；

(8) 裁决如被申请人不能返还全部或部分前述物品，应当向申请人三赔偿相应物品的购买价格；

(9) 裁决被申请人立即停止侵害三申请人的知识产权, 包括但不限于商业秘密、商标及其他知识产权, 并赔偿三申请人受到全部损失;

(10)裁决被申请人补偿申请人因本案承担的律师费暂计人民币 495,646.40 元;

(11)裁决被申请人承担申请人为本案支出的财产保全费、诉讼财产保全责任险保费、公证认证费、翻译费、办案差旅费及本案仲裁费等一切相关费用(以最终实际发生金额为准, 三申请人后续将予明确)。

上述 (2)-(5) 和 (10) 项请求金额暂计 1,187,555.28 美元和人民币 143,310,295.08 元。

## 第三部分 争议情况

### 六、 达成商业合作关系

6.1 申请人一和申请人二是在特拉华州注册的生殖医学和生育健康行业的投资公司。John Gorden Wilcox("约翰博士")等人早先在美国创办了 HRC 生殖中心医学集团以运营一个生殖健康诊所("HRC 生殖诊所"), 在长达 20 年的时间内不断引进及改进新的辅助生殖技术和操作程序。通过使用尖端的辅助生殖技术, HRC 生殖诊所获得了很高的成功率, 成为美国顶尖的生殖诊所之一。HRC 生殖诊所在服务中国大陆患者的过程中取得了巨大的成功, 在中国获得了良好的声誉。为了更好的向ню签证或其他原因不能前往美国的中国患者提供服务, 约翰博士等人设立了申请人一和申请人二。

6.2 2016 年, 通过申请人二股东邓絮阳的介绍, 申请人一、申请人二与以胡依晗为代表的被申请人、胡波进行了协商。胡波是海南慈信实业有限公司的法定代表人、执行董事和大股东, 该公司拥有被申请人所在地的物业。在 2017 年约翰博士与被申请人的法定代表人胡依晗协商并签订《合作协议》的过程中, 胡依晗是被申请人的法定代表人、执行董事和持股 95%的股东。

6.3 申请人一和申请人二了解到胡依晗在海南博鳌乐城国际医疗旅游先行区内拥有一家医院, 即海南博鳌慈铭奥亚医院有限公司, 希望在该医院内开设生殖辅助中心, 但是苦于没有建设生殖中心的资金、人员和技术。被申请人说明中国法律允许申请人一和申请人二在被申请人医院内全面运营和管理 IVF 中

心。被申请人还向申请人一和申请人二承诺，将由申请人一和申请人二全面负责经营和管理 IVF 中心，被申请人仅分成 10%的收入及收取少量场地租金。

6.4　2016 年 12 月 8 日，胡依哈代表被申请人和胡波共同签署了《意向书》，书面记载了被申请人对申请人一、申请人二作出的上述承诺。基于对被申请人作出的说明和承诺的信任，申请人一和申请人二决定投入资金、人员和技术，在被申请人医院设立并管理 IVF 中心。

6.5　为便于合作，申请人一、申请人二和北京瀚康管理咨询中心(有限合伙)("瀚康")共同成立了申请人三。申请人一、申请人二和瀚康分别持有申请人三 55%、35%和 10%的股权。瀚康是一家根据中华人民共和国法律设立的有限合伙企业，其注册地址为北京市朝阳区西大望路甲 12 号 2 号楼(国家广告产业园区孵化器 27603 号)。该企业的执行事务合伙人为北京慈记健康管理有限公司，胡波为该执行事务合伙人委派的代表。

6.6　在申请人一、申请人二和瀚康设立申请人三之后，在达成前述合意的基础上，三申请人与被申请人于 2017 年 9 月 10 日签署了《合作协议》。各方的意向是，申请人三将全面运营和管理 IVF 中心，而被申请人仅提供辅助支持，以满足中国法律法规和海南省政府规章的要求。

七、　《合作协议》

7.1　三申请人和被申请人签署的《合作协议》全面记载和反映了双方达成的合意，申请人三全面负责运营及管理 IVF 中心，并负责 IVF 中心包括员工管理、宣传广告、技术支持、采购管理、后勤服务等在内的管理服务。《合作协议》的具体约定包括：

(1)　《合作协议》第 2.3 条约定，被申请人承诺尽最大努力不晚于 2018 年 10 月 1 日("最迟开业日")促进 IVF 中心开业，并在最迟开业日之前取得经营 IVF 中心所需的必要批准、许可及批复；

(2)　《合作协议》第 2.3.4 条约定，IVF 中心购买的大型医疗设备由申请人三决定，并且费用由申请人三承担。被申请人代表申请人三，进口和购买上述设备。即使上述设备计入被申请人账目下，仍实际归属于申请人三。在《合作协议》终止时，除非申请人三另行同意，上述设备的所有权归申请人三所有；

(3) 《合作协议》第 3.2 条约定，申请人三将负责 IVF 中心的人事管理，包括但不限于组织结构、管理团队、人数、招聘、培训、薪酬体系、工作标准/程序、职位转换等。……申请人亦享有选择前述人员以及决定雇佣条款的专属权利；

(4) 《合作协议》第 3.3 条约定，IVF 中心宣传或营销的所有材料或活动应由申请人三和被申请人共同决定；

(5) 《合作协议》第 3.4 条约定，申请人三负责向 IVF 中心提供免费技术指导和支持，包括决定和设立辅助生殖治疗项目、治疗标准、标准操作程序、以及员工培训等。申请人三可以自行判断为被申请人员工提供培训，受训人和培训内容的范围应由申请人三决定；

(6) 《合作协议》第 3.2、3.5、5.1.1、5.1.2 等条款约定，被申请人应为 IVF 中心开设独立的一般存款账户("IVF 账户")，该账户仅用于 IVF 中心开展业务使用。被申请人同意申请人三就 IVF 账户享有特权，该账户由申请人三专属管理和控制。被申请人仅有权就合法性及合规性角度监督 IVF 账户的使用，但不得自行从 IVF 账户中转出或扣除任何款项；

(7) 《合作协议》第 8.2.2 条约定，申请人一(亲自或通过申请人三或其员工)引入的任何与 IVF 治疗或 IVF 中心运营有关的系统、软件、指导、意见、手册、模式模型、流程均应视为申请人一的专有技术和商业秘密。此外，所有 IVF 中心运营过程中以及提供 IVF 服务所产生或创造的所有知识产权应属于申请人三。《合作协议》第 8.4 条约定，未经申请人三同意，被申请人不得以任何目的使用或者允许任何第三方以任何目的的使用前述知识产权；

(8) 此外，《合作协议》第 16.1 条约定，本协议的附件构成本协议整体的一部分。本协议与附件发生冲突的，以本协议为准。

7.2 被申请人在《合作协议》附件 2.2《承诺函》中明确承诺，如被申请人进行股权转让，应当在该股权转让生效前书面通知三申请人。若任何交易或相关的系列交易直接或间接导致被申请人的控制权从原控制人转移给他人，应事先取得申请人三就控制权变更事宜的书面同意。《承诺函》将"控制"的定义为持有被申请人超过 50%的股权，或通过持有超过 50%股权或其他方式，能够控制被申请人的管理或决策。

7.3　2017 年 9 月 13 日，北京梦美科技有限公司、申请人二和被申请人签署了《合作协议》附件 3.2《商标许可协议》。同日，申请人一与被申请人签署了《合作协议》附件 3.3《专有技术许可协议》。这些协议约定：

(1)　《商标许可协议》和《专有技术许可协议》均约定，如果《合作协议》终止，则本协议应在《合作协议》终止之日终止；除另有书面约定外，被申请人基于本协议获得的所有权利应终止。

(2)　《商标许可协议》第 10.3 条和《专有技术许可协议》第 11.3 条均约定，各方有权对商标侵权向任何一个有管辖权的法院或其他机关寻求临时或者永久强制措施或其他类似的救济措施。

## 八、 补充协议

8.1　2018 年 4 月 21 日，三申请人与胡波签署了《SUPPLEMENTARY AGREEMENT TO THE COLLABORATION AGREEMENT》（《合作协议的补充协议》）。根据该补充协议，申请人一、申请人二和胡波有义务按比例承担应该向被申请人支付共计 1,087,026.48 美元的启动资金，其中申请人一支付 597,864.56 美元，申请人二支付 380,459.27 美元，胡波承担剩余的 108,702.65 美元。考虑到中国的外汇管制政策，向被申请人的 IVF 账户支付该启动资金可能非常耗时，并导致建设计划延误，申请人一和申请人二通过向胡波银行账户转账的方式向被申请人支付启动资金。在该协议签订之后，申请人一向胡波支付了共计 1,187,555.28 美元的启动资金。

8.2　2018 年 5 月 3 日，申请人三与被申请人签署了《关于启动资金的支付及购买设备的补充协议》，由于被申请人已经通过胡波收到了启动资金，被申请人确认申请人三无需向 IVF 账户支付启动资金，被申请人还确认 IVF 中心的设备实际归属于申请人三。

## 九、 《合作协议》的履行

9.1　在签署前述各份协议之后，三申请人按照约定实际履行了合同，为建设 IVF 中心投入巨额投资，并运营及管理 IVF 中心。如前所述，在申请人一、申请人二支付了启动资金 1,187,555.28 美元。申请人三也为建设、管理、运营 IVF 中心及购买该中心内的医疗设备支付了人民币 42,787,470.68 元，其中包括以下费用：

(1) 支付 IVF 中心的设计、装修、建设和劳务等费用，人民币 30,910,237.41 元；

(2) 支付购买医疗设备、电子设备和办公设备等购买价款，人民币 6,024,642.83 元；

(3) 支付试剂耗材费、宣传材料费、医院水电费、员工工资和社保等费用，人民币 5,879,768.44 元。

9.2　更为重要的是，被申请人完全依赖三申请人的投资、知识产权和技术力量，获取了 IVF 批复。被申请人自身没有从事人类辅助生殖或相关程序的经验，其完全依托三申请人的丰富经验才获得 IVF 批复，得以从事第一、第二和第三代试管婴儿手术。为了申请该 IVF 批复，三申请人收集、整理了大量信息，准备了数百份申请文件；三申请人还提供了标准操作程序手册(SOP)，其中包含执行此类手术的确切步骤，该手册属于具有极高商业价值的专有信息、反映了 HRC 生殖诊所通过数十年的执业获取的专有技术和经验。此外，三申请人还派遣了包括胚胎学家在内的多名专家前往海南，为监管机关对 IVF 中心的审查做前期准备，并当场回答监管机关的提问。

9.3　由于三申请人尽最大努力帮助被申请人申请 IVF 批复，被申请人最终于 2019 年 3 月 7 日获得该批复，可以进行第一、第二和第三代试管婴儿手术。在全国范围内，仅有极少量的医院获取了进行第三代试管婴儿手术的资格，该 IVF 批复具有极高的商业价值，将为 IVF 中心带来巨额商业利益。被申请人的现任法定代表人韩小红在 2019 年 5 月 9 日通过微信中向约翰博士说明，被申请人是中国唯一一家获得三代试管婴儿许可证的私人医疗机构。由于三申请人为建设 IVF 中心投入了巨额投资和知识产权，并为申请该批复尽到了最大努力，且 IVF 中心完全依靠三申请人的投资和知识产权获取了 IVF 批复，三申请人有权获得这些投入所带来的收益和 IVF 批复的价值。

十、　被申请人违反《合作协议》

10.1　在《合作协议》签署仅两个月后，胡依晗于 2017 年 12 月 18 日将被申请人 95%的股权转让于韩小红，韩小红同时接替胡依晗担任被申请人的法定代表人和执行董事。但是，被申请人并未按照其在《合作协议》附件 2.2《承诺函》中的承诺，在事前就该股权转让事宜通知三申请人，更未获取申请人三的书面同意，其股权转让行为已经严重违反了《合作协议》及附件 2.2《承诺函》的约定。正是由于被申请人、胡依晗违约将被申请人 95%的股权转让于韩小红，导致韩小红得以控制被申请人，采取之后的一系列违约行为。

9

10.2　在被申请人于 2019 年 3 月 7 日取得 IVF 批复之后，韩小红控制被申请人全面推翻《合作协议》约定，采取了一系列有计划的违约行为，以达到霸占 IVF 中心、排除三申请人对 IVF 中心的运营和管理的目的。被申请人的违约行为，包括但不限于：

(1)　被申请人违反双方共同决定宣传和营销材料的约定，单方面决定宣传一家从事生殖健康、试管婴儿等业务的 Global Fertility Genetics 的公司("GFG 公司")，以及宣传一些所谓"美国医生"在 IVF 中心提供医疗服务的情况。被申请人的宣传行为严重违反了《合作协议》第 3.3 条的约定，导致 IVF 中心和三申请人的形象遭受损害，影响了 IVF 中心的正常经营活动；

(2)　根据《合作协议》第 3.2、3.5、5.1.1 和 5.1.2 条的规定，申请人三专属管理及控制 IVF 账户，被申请人仅就合法性和合规性的角度监督 IVF 账户的使用，且不能从 IVF 账户中转出任何款项。但是，被申请人仍然控制了 IVF 账户的复核盾，即申请人三对该账户的任何操作都需要慈铭的同意，被申请人还拒绝向申请人三移交该复核盾，违反了《合作协议》对 IVF 账户的约定；

(3)　被申请人未能按照《合作协议》约定在最迟开业日 2018 年 10 月 1 日之前促使 IVF 中心开业，该中心仅在 2019 年 3 月 7 日才获得开业条件。在 IVF 中心获得开业条件后，被申请人竟要求推翻《合作协议》的约定，并以断电等损害 IVF 中心医疗设备的方式阻碍开业。该行为违反《合作协议》第 2.2 条、第 2.3 条和第 4.2 条，导致 IVF 中心无法正常开业，造成申请人三遭受了巨额损失；

(4)　在被申请人阻碍 IVF 中心开业之后，其假借对于 IVF 中心医疗设备进行盘点为名，采取行动占有申请人三的财产。被申请人已经显露出其试图单方面运营 IVF 中心、实施暴力霸占申请人三财产的明显恶意。该等行为违反了被申请人在合作之初的承诺，并根本违反了《合作协议》第 2.3 条和第 4.2 条等条款的约定；

(5)　更有甚者，被申请人在 2019 年 7 月 4 日指使其保安人员阻扰 IVF 工作人员进入 IVF 中心，并更换了门锁，导致三申请人完全被排除在 IVF 中心的经营和管理工作之外。被申请人通过这些违约行为控制了 IVF 中心，导致 IVF 中心无法正常开业和经营，也无法产生收入以支付运营成本。被申请人已经根本违反了 IVF 中心应由申请人三全面运营和管理的合同

10

约定；

(6) 在被申请人霸占 IVF 中心之后，被申请人单方制定 IVF 中心的定价策略、营销方式、工作流程等，单方开业并使用申请人三的医疗设备，还邀请了不明身份的所谓"美国医生"在 IVF 中心提供问诊。该等行为严重违反了 IVF 中心由申请人三全面运营管理、由申请人三选择医护人员、被申请人不得干涉等合同约定，已经构成根本违约。此外，被申请人邀请身份不明的、未在被申请人注册的所谓"美国医生"在 IVF 中心行医的行为，严重违反了《职业医师法》、《医疗机构管理条例》等法律法规；

(7) 被申请人进而在 2019 年 8 月 1 日向三申请人发出《律师函》，要求解除《合作协议》。但是，无论是根据《合作协议》或是根据《合同法》，被申请人均无权解除《合作协议》。被申请人发出该《律师函》仅能证明其已明示不遵守、不履行《合作协议》的约定，还暴露了被申请人的真实意图：在三申请人向 IVF 中心累计投资超过 1,000 万美元、贡献其专有技术和知识产权以获取具有极高商业价值的 IVF 批复之后，被申请人立即撕毁协议，以达到其霸占三申请人投资、医疗设备和 IVF 批复的真实目的。

10.3 被申请人在韩小红控制下采取的前述违约行为，均明确显示了被申请人完全推翻合同约定、阻止三申请人管理和运营 IVF 中心，并霸占 IVF 中心的违法目的。被申请人不仅严重的违反了诚实信用原则、公平原则，更根本违反了《合作协议》的约定、侵犯了三申请人的合法权益，导致该合同的合同目的无法实现，并使得三申请人遭到重大损失。

**十一、 三申请人面临急迫和不可挽回的损失**

11.1 如前所述，三申请人购买了大量昂贵的专业医疗设备、投入巨额资金设立了 IVF 中心，但是在 IVF 中心建设完成、获得人类辅助生殖技术试运营批复之后，被申请人不仅不积极促使开业，反而拒绝履行合同，以断电等可能损害 IVF 中心医疗设备的方式阻碍开业，阻止申请人三的人员进入 IVF 中心，严重违反诚实信用，背离《合作协议》的缔约初衷。此外，按照《合作协议》约定，IVF 中心的医疗装置、设备等物品均归申请人三所有，被申请人在未取得申请人三同意的前提下，贸然对不属于被申请人所有的财产进行所谓盘点，加上 IVF 中心开设于被申请人租用的场所，使得被申请人很容易侵占该等设备、物品，并将其转移。前述事实可以证明，被申请人的目的是将申请人三所有的医疗设备和 IVF 中心占为己有。由于申请人三已经对上述财产失去控制，被申请人可能会将医疗设备销售给第三方，或将这些财产转移，申请人三已

11

经遭受了重大损失，且申请人三的财产权而临非常急迫的侵害，急切要求被申请人停止侵权行为。

11.2   除三申请人的投资外，三申请人还向被申请人提供了与三申请人医疗技术有关的知识产权、商业秘密、专有技术和其他高度机密的信息，包括三申请人的设计、流程手册、政策和程序等。被申请人完全依靠三申请人的技术支持才获得了人类辅助生殖技术试运行的批准。然而，在被申请人违反《合作协议》，在获得该批准之后，被申请人立即开始宣传 IVF 中心系与一家位于纽约医院的医生合作。鉴于被申请人本身不具备以专业、道德和负责的方式提供所需生殖技术的能力或资格，被申请人可能已经向这些纽约医生提供了申请人的生殖技术和其他保密信息。被申请人的股东韩小红及其前任执行董事胡依晗也计划在加利福尼亚州建立一家医院，以利用三申请人提供的专有技术、知识产权和其他高度机密的信息，开展类似业务。三申请人正面临被申请人向第三方披露其知识产权和保密信息的迫在眉睫的威胁，这将对三申请人造成无法弥补的损害。此外，尽管存在仲裁协议，《商标许可协议》和《专有技术许可协议》都允许申请人寻求临时或永久性救济措施。

11.3   申请人三还了解到被申请人存在无法偿还到期债务的情况，并可能出售申请人三的财产以进行还偿，一旦发生该情况，将导致申请人三遭受无法逆转的巨大损失。特别是 IVF 中心的医疗设备已经经过了配套调试，获取了前述人类辅助生殖技术试运营的政府批复，如被申请人出售设备，将使得整个 IVF 中心失去使用功能，并可能失去该 IVF 批复。考虑被申请人可能对申请人三的财产进行处置，导致申请人三遭受巨大损失，申请人三现面临财产损失的危险是现实和紧迫的。由于被申请人已无法偿还到期债务，如未对被申请人的财产进行保全，仲裁庭作出的最终裁决将无法使得三申请人免受不可弥补的损失。此外，考虑到三申请人提出的仲裁请求有事实和法律支持，极有可能受到仲裁庭的支持，三申请人在提交本《仲裁申请书》的同时已经一并提交了保全申请书，申请由申请人三保管前述属于申请人三的财产，并查封、扣押、冻结被申请人的财产，以避免裁决生效后面临执行困难。

11.4 在被申请人通过断水断电、禁止三申请人人员进入、更换门锁等一系列违约行为霸占 IVF 中心和属于申请人三的医疗设备之后，被申请人立即对外宣传 IVF 中心将对外营业、单方公布服务价格和服务项目，并邀请不明身份的所谓"美国医生"在 7 月 31 日到 8 月 2 日在 IVF 中心为患者提供面诊。被申请人的行为再次根本违反了宣传材料应共同商定、被申请人不得干扰 IVF 中心的定价策略、申请人三享有对于选择医护人员的专属权利、申请人三全面负责运营和管理 IVF 中心等合同约定，并侵犯了申请人三对 IVF 中心医疗设备

的所有权。同时，被申请人雇佣不明外国人员在 IVF 中心提供医疗服务的行为还严重违反了《医疗机构管理条例》、《执业医师法》等法律法规。如前所述，被申请人通过拒绝三申请人进入 IVF 中心、霸占属于申请人三的医疗设备以及 IVF 批复、聘请所谓"美国医生"在 IVF 中心提供医疗服务，以及发出上述《律师函》等行为，根本违反了《合作协议》。

## 第四部分 诉由

十二、  违约

12.1  2017 年 12 月 18 日胡依嗒将被申请人 95%的股权转让于韩小红，但未获得申请人三的事先批准，这违反了《合作协议》附件 2.2。《合同法》第一百零七条规定，"当事人一方不履行合同义务或者履行合同义务不符合约定的，应当承担继续履行、采取补救措施或者赔偿损失等违约责任。" 根据《合作协议》第 10.2 条和第 11.1.2 条以及《合同法》第一百零七条，三申请人有权解除《合作协议》并要求被申请人赔偿损失。

12.2  被申请人单方面决定了推广文件的内容，未使用三申请人的名称和形象推广 IVF 中心，违反了《合作协议》第 3.3 条。根据《合作协议》第 10.2 条、第 11.1.1 条和《合同法》第一百零七条，三申请人有权解除《合作协议》并要求被申请人赔偿损失。

12.3  被申请人违反合作协议第 3.4 条规定，通过要求改变 IVF 中心的定价策略、营销方式和工作流程以及要求控制 IVF 中心账户等方式，来干扰 IVF 中心的运营。根据《合作协议》第 10.2 条、第 11.1.1 条和《合同法》第一百零七条，三申请人有权解除《合作协议》并要求被申请人赔偿损失。

12.4  被申请人未能尽最大努力在 2018 年 10 月 1 日之前对 IVF 中心开业，被申请人推翻《合作协议》的约定并采取措施阻止 IVF 中心开业，该行为违反《合作协议》第 2.2 条、第 2.3 条和第 4.2 条。根据《合作协议》第 10.2 条、第 11.1.1 条和《合同法》第一百零七条，三申请人有权解除《合作协议》并要求被申请人赔偿损失。

12.5  被申请人霸占 IVF 中心、单方运营该中心、宣传不明外国人员在 7 月 31 日到 8 月 2 日行医、以及雇佣该人员在 IVF 中心实际进行违法行医的行为，违反了《合作协议》第 1.2 条、第 3.2 条、第 3.3 条等条款，还严重违反了《医

疗机构管理条例》、《执业医师法》等法律法规，根据《合作协议》第10.2条、第11.1.1条和《合同法》第一百零七条，申请人有权解除《合作协议》并要求被申请人赔偿损失。

十三、　侵权

13.1　被申请人占有 IVF 中心的财产以及承载三申请人知识产权和商标的物品，包括临床操作手册、规章制度、实验室操作手册、定价策略及检查项目、人类辅助生殖技术试运营批复等，违反《合作协议》第2.3条和4.2条的约定，且侵害了申请人三的物权。《物权法》第三十四条规定，"无权占有不动产或者动产的，权利人可以请求返还原物。"根据《合作协议》第8.6条、第10.2条和第11.1.1条，《合同法》第一百零七条和《物权法》第三十四条等条款，三申请人有权解除《合作协议》，要求被申请人赔偿损失，确认申请人三对 IVF 中心的物品享有所有权，要求被申请人向申请人三返还前述财产。如被申请人不能返还全部或部分前述物品，应当向申请人三赔偿相应物品的购买价格。

13.2　被申请人可能向第三方披露了三申请人的保密信息，违反了《合作协议》第8.4条，并对三申请人的知识产权构成侵权。《侵权责任法》第二十一条规定，"侵权行为危及他人人身、财产安全的，被侵权人可以请求侵权人承担停止侵害、排除妨碍、消除危险等侵权责任。"根据《合作协议》第10.2条和第11.1.1条和《侵权责任法》第二十一条等条款，三申请人有权解除《合作协议》，要求被申请人赔偿损失，要求被申请人停止侵犯三申请人的知识产权。

十四、　保留权利

14.1　申请人保留在最终裁决作出前，根据法律和仲裁规则增加、扩展或修改本《仲裁申请书》内所做的各项请求及寻求的救济，及提出进一步的意见和证据的权利。

基于以上事实和理由，为维护自身的合法权益，申请人依据相关法律法规规定，特向贵会提出上述仲裁申请，恳请贵会裁如所请。

　　　　此致

中国国际经济贸易仲裁委员会

申请人一: HRC-Hainan Holding Company, LLC

申请人二: D&W Holding Company, LLC

申请人三: 海南亨廷顿医院管理咨询有限公司

委托代理人:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

秦悦民、郑润镐、张彬、刘洋、陆安琪、李翰、龙一铭

上海市通力律师事务所

2019 年 8 月 12 日

15

# EXHIBIT 2

[01251856]

## CHINA INTERNATIONAL ECONOMIC AND TRADE ARBITRATION COMMISSION

**Add:** 6/F CCOIC Building, 2 Huapichang Hutong, Xicheng District Beijing. 100035, P. R. China

**Tel:** (86-10)82217788

**Fax:** (86-10)82217766, 64643500

**E-mail:** info@cietac.org

(2019) ZGMZJ Zi No. 149237

### No. X20191492 Arbitration Case concerning the Collaboration Agreement

### Arbitration Notice

**1ˢᵗ Claimant**: HRC-Hainan Holding Company, LLC

**2ⁿᵈ Claimant:** D&W Holding Company, LLC

Attorney: Yuemin Qin, Yang Liu, Anqi Lu, Han Li and Yiming Long

**3ʳᵈ Claimant:** Hainan HRC Hospital Management and Consulting Co., Ltd.

Attorney: Yuemin Qin, Yi Zhang, Yang Liu, Anqi Lu, Han Li and Yiming Long

On 14 August 2019, our Commission received the Request for Arbitration filed against Ciming Boao International Hospital Co., Ltd. together with its exhibits in octuplicate from the Claimants; on September 2, 2019, our commission received the arbitration fee, RMB 1,325,421, advanced by the Claimants.

Our commission hereby inform the Claimants as follows:

**1.   Acceptance of this case**

The case is now officially accepted by the CIETAC and the case number is X20191492. Please indicate the case number in all submissions.

**2.   Arbitration Rules**

The *Arbitration Rules of China International Economic and Trade Arbitration Commission 2015* (effective as of January 1, 2015, the "**Arbitration Rules**") shall apply to this case. Our Commission also sent a copy of the Arbitration Rules and *the Panel of Arbitrators* to the Claimants together with this notice.

**3.   Arbitration Notice to the Respondent**

Our Commission sent the Arbitration Notice, a copy of the Request for Arbitration and its exhibits, the Arbitration Rules and *the Panel of Arbitrators* to the Respondent.

**4.   Nomination or Appointment of Arbitrator**

(i)      Pursuant to Article 25 of the Arbitration Rules, the case will be heard by an arbitral tribunal of three arbitrators.

(ii)     Upon receipt of this arbitration notice, the Claimants shall appoint or delegate the Chairman of CIETAC to appoint an arbitrator from the Panel of Arbitrators within 15 days. If the Claimants fail to appoint an arbitrator within the time limit, the Chairman of CIETAC will appoint an arbitrator on the behalf of the Claimants.

(iii)    The Claimants are encouraged to contact the Respondent in jointly appointing the presiding arbitrator within 15 days upon the receipt of the arbitration notice.

         Or alternatively, according to Article 27(3) of the Arbitration Rules, the parties may each recommend one to five arbitrators as candidates for the presiding arbitrator and shall each submit a list of recommended candidates. Where there is only one common candidate on the lists, such candidate shall be the presiding arbitrator jointly nominated by the parties. Where there are more than one common candidates on the lists, the Chairman of CIETAC shall choose the presiding arbitrator from among the common candidates having regard to the circumstances of the case, and he/she shall act as the presiding arbitrator jointly nominated by the parties. Where there is no common candidate on the lists, the presiding

arbitrator shall be appointed by the Chairman of CIETAC.

Where the parties have failed to jointly nominate the presiding arbitrator according to the above provisions, the presiding arbitrator shall be appointed by the Chairman of CIETAC.

(iv)    The Claimants shall reimburse the travelling and accommodation expenses incurred by the arbitrator appointed by the Claimants, if the arbitrator is not a resident in Beijing.

The parties shall reimburse such expenses incurred by the presiding arbitrator jointly appointed by the parties, if the presiding arbitrator is not a resident in Beijing.

Where a party has appointed an arbitrator but fails to advance a deposit for the travelling and accommodation expenses within the time period specified by CIETAC, the party shall be deemed not to have nominated the arbitrator.

## 5.   Case Manager

Our Commission has designated Ms. Yi Tao as the case manager. Her contact information is: Tel.: 010-82217745; Fax: 010-82217766; Email: taoyi@cietac.org.

## 6.   Language of this arbitration

The language of this arbitration will be in Chinese, and all submissions shall be made in Chinese.

## 7.   Miscellaneous

(i)     According to Article 21 of the Arbitration Rules, the copies of Arbitration Documents in this case shall be in quintuplicate.

(ii)    According to Article 17 of the Arbitration Rules, the Claimants may apply to amend their

claim and the Respondent may apply to amend its counterclaim. However, the arbitral tribunal may refuse any such amendment if it considers that the amendment is too late and may delay the arbitral proceedings.

(iii)    According to Article 38 of the Arbitration Rules, for cases heard in camera, the parties and their representatives, the arbitrators, the witnesses, the interpreters, the experts consulted by the arbitral tribunal, the appraisers appointed by the arbitral tribunal and other relevant persons shall not disclose to any outsider any substantive or procedural matters relating to the case.

(iv)    According to the document submitted by the Claimants, all documents of the case shall be served to the following address (except for the documents delivered in person or sent by fax):

Yang Liu, Llinks Law Offices

Address: 16F, ONE LUJIAZUI, 68 Yin Cheng Road Middle, Shanghai, P.R.C

Zip Code: 200120

China International Economic and Trade Arbitration Commission (Seal)

September 6, 2019

CC: Respondent: Ciming Boao International Hospital Co., Ltd. (formerly Hainan Boao Ciming Aoya Hospital Co., Ltd.)

# 中国国际经济贸易仲裁委员会
## CHINA INTERNATIONAL ECONOMIC AND TRADE
## ARBITRATION COMMISSION

地址: 北京市西城区桦皮厂胡同 2 号国际商会大厦六层 **Add:** 6/F CCOIC Building, 2 Huapichang Hutong,
邮编: 100035                                                 Xicheng District, Beijing, 100035, P. R. China
电话: (86-10)82217788                                       **Tel:** (86-10)82217788
传真: (86-10)82217766, 64643500                    **Fax:** (86-10)82217766, 64643500
电子信箱: info@cietac.org                        **E-mail:** info@cietac.org

(2019) 中国贸仲京字第 149237 号

### X20191492 号合作协议争议案
### 仲裁通知

第一申请人 HRC-Hainan Holding Company, LLC
第二申请人 D&W Holding Company, LLC
共同仲裁代理人 秦悦民、刘洋、陆安琪、李翰、龙一铭
第三申请人 海南亨廷顿医院管理咨询有限公司
仲裁代理人 张移、秦悦民、刘洋、陆安琪、李翰、龙一铭:

    兹确认收到你方于 2019 年 8 月 14 日交至本会仲裁院的以慈铭博鳌国际医院有限公司 (原名: 海南博鳌慈铭奥亚医院有限公司) 为被申请人的仲裁申请书及其附件各一式八份, 以及于 2019 年 9 月 2 日预缴的仲裁预付金人民币 1,325,421 元。

    本会仲裁院现通知如下:
    一、案件受理
    本会根据你方和被申请人于 2017 年 9 月 10 日签订的《合作协议》中的仲裁条款已受理本案。本案案号为 X20191492。请你方在今后提交的文件中注明本案案号。
    二、仲裁规则的适用
    本案仲裁程序适用自 2015 年 1 月 1 日起施行的《中国国际经济贸易仲裁委员会仲裁规则》(以下简称"《仲裁规则》")。现随函转去《仲裁规则》和仲裁委员会《仲裁员名册》各一式一份, 请查收。
    三、通知被申请人
    本会仲裁院已同时向被申请人慈铭博鳌国际医院有限公司 (原名: 海南博鳌慈铭奥亚医院有限公司) 发出仲裁通知, 并将你方的仲裁申请书及其附件、本会《仲裁规则》和《仲裁员名册》各一式一份寄送被申请人, 要求被申请人按照《仲裁规则》的规定办理相关事宜。
    四、仲裁员的选定

1

1. 根据《仲裁规则》第二十五条的规定，本案将由三名仲裁员组成仲裁庭进行审理。

2. 请你方在本会《仲裁员名册》中选定或委托本会主任指定一名仲裁员，并在收到本通知之日后15天内将你方选定的仲裁员姓名或委托本会主任指定事宜以书面方式告知本会；若你方未能在上述期限内选定或委托指定，本会主任将在《仲裁员名册》中为你方指定一名仲裁员。

3. 请你方直接与被申请人联系，在本会《仲裁员名册》中共同选定或共同委托本会主任指定一名首席仲裁员，并在被申请人收到仲裁通知之日后15天内将共同选定的首席仲裁员姓名或共同委托本会主任指定事宜共同或分别以书面方式告知本会。

根据《仲裁规则》第二十七条第（三）款的规定，你方及被申请人亦可在本会《仲裁员名册》中各自推荐一至五人作为首席仲裁员的人选，并在被申请人收到仲裁通知之日后15天内将推荐名单以书面方式提交本会。如果双方的推荐名单中有一名人选相同，则该位人士即为双方当事人共同选定的首席仲裁员；如果有一名以上人选相同，则由本会主任根据案件的具体情况在相同人选中确定一人为本案首席仲裁员。如果你方和被申请人提交的推荐名单中没有相同人选，本会主任将指定本案首席仲裁员。

如果你方和被申请人未能按上述方式共同选定或共同委托本会主任指定首席仲裁员，本会主任将根据《仲裁规则》第二十七条第（四）款的规定指定本案首席仲裁员。

4. 本会仲裁院谨提请当事人注意，如果你方选定居住地不在北京的仲裁员，你方还应预付该仲裁员办理本案而发生的差旅费、食宿费等实际费用。

如果你方和被申请人共同选定居住地不在北京的首席仲裁员，双方还应共同预付该仲裁员办理本案而发生的差旅费、食宿费等实际费用。

根据《仲裁规则》第八十二条第（二）款的规定，当事人未能按期预缴上述实际费用的，视为没有选定仲裁员，本会主任将根据《仲裁规则》第二十七条的规定指定仲裁员或首席仲裁员。

**五、本案经办秘书**

根据《仲裁规则》第十三条的规定，本会仲裁院已指定陶羿女士协助本案的程序管理工作，其联系电话为：010-82217745；传真为：010-82217766；电子邮箱为：taoyi@cietac.org。

**六、仲裁语言**

根据《仲裁规则》第八十一条的规定，除非当事人对仲裁语言另有约定或仲裁委员会视案件的具体情形确定其他语言为仲裁语言，本案仲裁程序将以中文进行。因此，当事人在本案中需提交的任何文件均应以中文提交。

七、其他事项

1. 根据《仲裁规则》第二十一条的规定，当事人在本案中需提交的任何文件均应一式五份。

2. 根据《仲裁规则》第十七条的规定，你方可以对所提出的仲裁请求提出更改，但是仲裁庭认为提出更改的时间过迟而影响本案仲裁程序正常进行的，可以拒绝受理该更改请求。

3. 根据《仲裁规则》第三十八条的规定，不公开审理的案件，当事人及其代理人、证人、翻译等均不得对外界透露本案实体和程序的有关情况。

4. 根据你方提交的书面材料，本案应送达你方的所有文件，除当面递交、传真外，本会仲裁院将按下述收件人及地址送达你方：

收件人：刘洋  上海市通力律师事务所
地　址：上海市银城中路 68 号时代金融中心 16 楼
邮　编：200120

在以后的程序过程中，如你方收件人及收件地址发生变更，请及时通知本会。

本会仲裁院期待着在今后的仲裁程序过程中为双方当事人提供及时、良好、有效的服务，亦希望双方当事人诚信合作，尽早妥善解决本案争议。

特此通知。

附件：1.《仲裁规则》
　　　2.《仲裁员名册》

抄送：被申请人  慈铭博鳌国际医院有限公司
　　　　　（原名：海南博鳌慈铭奥亚医院有限公司）（无附件）

# EXHIBIT 3

{01251856}

## 财产保全申请书

### Application for Asset Preservation

| | | |
|---|---|---|
| 申请人 | : | 海南亨廷顿医院管理咨询有限公司 |
| **Claimant** | | **Hainan HRC Hospital Management and Consulting Co., Ltd.** |
| 住所 | : | 海南省琼海市博鳌镇海滨街 107 号（201 室） |
| Address | | Room 201, No. 107 Coast Street, Bo'ao Town, Qionghai City, Hainan Province |
| 法定代表人 | : | 约翰•戈登威尔考（John Gorden Wilcox） |
| Legal representative | | John Gorden Wilcox |
| 联系电话 | : | (021) 60433995 或 18817582532 |
| Contact number | | +21 6043 3995 or 188 1758 2532 |
| 确认的送达地址 | : | 上海市银城中路 68 号时代金融中心 16 楼(200120) 上海市通力律师事务所 刘洋律师收 |
| Delivery address | | Liu Yang, Attorney-at-law, 16F, ONE LUJIAZUI, 68 Yin Cheng Road Middle, Shanghai, P.R.China |
| 被 申 请 人 | : | 慈铭博鳌国际医院有限公司 |
| | | （原名: 海南博鳌慈铭奥亚医院有限公司） |
| **Respondent** | | **Ciming Boao International Hospital Co., Ltd. (formerly Hainan Boao Ciming Aoya Hospital Co., Ltd.)** |
| 住所 | : | 海南省琼海市博鳌镇海滨街 107 号（308 室） |
| Address | | Room 308, No. 107 Coast Street, Bo'ao Town, Qionghai City, Hainan Province |
| 统一社会信用代码 | : | 91469002MA5RD4M96T |
| Unified Social Credit Code | | 91469002MA5RD4M96T |
| 法定代表人 | : | 韩小红 |
| Legal representative | | Xiaohong Han |
| 联系电话 | : | 13601228666 |
| Contact number | | 136 0122 8666 |

**申请事项**

**Claims**

1. 请求贵院裁定查封、扣押、冻结被申请人银行存款人民币 143,310,295.08 元或其他等值财产;

   Order to seal up, seize and freeze the respondent's bank deposit of RMB 143,310,295.08 or other equivalent properties;

2. 请求贵院裁定查封、扣押、冻结放置于慈铭博鳌国际医院生殖健康及不孕不育部(地址为海南省琼海市中原镇博鳌乐城国际医疗旅游先行区 09 单元 5 地-018 号)的医疗装置、设备和物品。

   Order to seal up, seize and freeze the medical devices, equipment, and properties at the fertility health and infertility department of Ciming Boao International Hospital, with its address in No.018, No.5 Di, Unit 09, Boao Lecheng International Medical Tourism Pilot Zone, Zhongyuan Town, Qionghai, Hainan province.

**事实及理由**

**Facts and Grounds**

关于中国国际经济贸易仲裁委员会受理的申请人、HRC-Hainan Holding Company, LLC、D&W Holding Company, LLC 与被申请人《合作协议》纠纷仲裁案, 申请人已经提出仲裁请求要求被申请人赔偿损失, 以及要求确认放置于慈铭博鳌国际医院生殖健康及不孕不育部(地址为海南省琼海市中原镇博鳌乐城国际医疗旅游先行区 09 单元 5 地-018 号)的医疗装置、设备和物品属于申请人所有, 并要求被申请人返还该等医疗装置、设备和物品。

In relation to the arbitration regarding the dispute arising from the Collaboration Agreement between the Claimant, HRC-Hainan Holding Company, LLC, D&W Holding Company, LLC and the Respondent, the Claimant has submitted the Request for Arbitration claiming for damages, a declaratory relief that Claimant has the ownership over the medical devices, equipment, and properties at the fertility health and infertility department of Ciming Boao International Hospital which is located in No.018, No.5 Di, Unit 09, Boao Lecheng International Medical Tourism Pilot Zone, Zhongyuan Town, Qionghai, Hainan province, and the restitution of the aforementioned medical devices, equipment, and properties to the Claimant.

{01279037}

为了防止被申请人在仲裁审理期间转移、隐匿财产，使裁决生效后面临执行的困难，申请人现根据《中华人民共和国仲裁法》第二十八条和《中华人民共和国民事诉讼法》第一百条的规定，特向贵院提出如上保全申请，请贵院依法办理。

In order to prevent the Respondent from transferring and concealing its properties during the arbitration process, rendering the arbitration award ineffective, the Claimant hereby submits the Application for Asset Preservation pursuant to Article 28 of the PRC Arbitration Law and Article 100 of the PRC Civil Procedure Law. Please grant all the reliefs sought by the Claimants in accordance with the law.

为节省司法成本，保障日后可能的执行程序，恳请贵院参照《最高人民法院关于网络查询、冻结被执行人存款的规定》的相关规定，通过网络查询、冻结被申请人账户中人民币143,310,295.08 元或其他等值财产，以及冻结被申请人所持有的登记于北京市工商行政管理局朝阳分局的瀚耀(北京)健康咨询有限公司的股权为盼。

To save judicial cost and secure the enforcement, the Claimant requests the court to inquire into the Electronic Network, freeze RMB 143,310,295.08 or other equivalent assets in the account of the Respondent pursuant to the Supreme People's Court Rules on Inquiring into and Freezing Enforcees' Deposits Through Electronic Network, and freeze the equities of Hanyao (Beijing) Health Consulting Co., Ltd. owned by the Respondent, registered with Chaoyang Branch of Beijing Administration for Industry and Commerce.

此致

Yours,

海南省第一中级人民法院

Hainan No. 1 Intermediate People's Court

**申请人: 海南亨廷顿医院管理咨询有限公司**

**Claimant: Hainan HRC Hospital Management and Consulting Co., Ltd.**

公章:

(Company chop)

2019 年 8 月   日

{01279037}

财产线索:

Asset information

1. 冻结被申请人的银行存款, 具体账户信息如下:

Freeze the Respondent's bank deposit. Details of the bank accounts:

| 序号<br>No. | 账号<br>Account No. | 开户银行<br>Bank | 开户银行地址<br>Bank Address |
|---|---|---|---|
| 1 | 21369001040005087 | 中国农业银行琼海市支行<br>Qionghai Sub-branch of Agricultural Bank of China | 海南省琼海市人民路 175 号<br>No. 175 Renmin Road, Qionghai, Hainan province, China |
| 2 | 21370001040023327 | 中国农业银行人民路支行<br>Renmin Road Sub-branch of Agricultural Bank of China | 海南省琼海市爱华东路 190 号<br>No. 190 East Aihua Road, Qionghai, Hainan province, China |

2. 冻结被申请人所持有的股权:

Freeze the equities owned by the Respondent:

| 序号<br>No. | 公司名称<br>Company name | 登记机关<br>Registration Authority |
|---|---|---|
| 1 | 瀚耀(北京)健康咨询有限公司<br>Hanyao (Beijing) Health Consulting Co., Ltd. | 北京市工商行政管理局朝阳分局<br>Chaoyang Branch of Beijing Administration for Industry and Commerce |

3. 冻结被申请人的不动产

Seal up the property owned by the Respondent:

| 序号<br>No. | 坐落位置<br>Location |
|---|---|
| 1 | 海南省琼海市中原镇博鳌乐城国际医疗旅游先行区 09 单元 5 号地-018 号<br>No. 018, Unit 09-05, Boao Lecheng International Medical Tourism Pilot Zone, Hainan Province |

4. 查封、扣押、冻结放置于慈铭博鳌国际医院生殖健康及不孕不育部(地址为海南省琼海市中原镇博鳌乐城国际医疗旅游先行区 09 单元 5 地-018 号)的医疗装置、设备和物品,

{01279037}

具体包括：

Seal up, seize and freeze the following medical devices, equipment, and properties at the fertility health and infertility department of Ciming Boao International Hospital, including:

| 序号 | 设备名称 | 规格型号 | 数量 | 价格(单价) | 生产商 | 出厂号 | 放置位置 |
|---|---|---|---|---|---|---|---|
| 1 | 6'IVFWorkstation 体外受精 (IVF) 超净工作台 | L126DUAL | 5 | 276000 | 丹　麦 K-SYSTEMS | 18160012-181600 16 | IVF 实验室 |
| 2 | 4'IVF Workstation 体外受精 (IVF)超净工作台 | L124IVF | 2 | 188000 | 丹　麦 K-SYSTEMS | 1608L124A01070 9/18160011 | IVF 实验室 |
| 3 | 6'IVFWorkstation 体外受精 (IVF) 超净工作台 | L126MP | 2 | 289000 | 丹　麦 K-SYSTEMS | 18040018/181400 91 | IVF 实验室 |
| 4 | Micromanupulator 显微操作仪 | NT-88-V3 | 2 | 174000 | Narishegi （NIKON） | 18047/17211 | IVF 实验室 (126MP1\2 操作台上) |
| 5 | Stereo　　　Scope 体视显微镜 | SMZ1270 | 6 | 34200 | 日本 NIKON | 2104411/2104566 /2104592/210443 7/2104124/21044 36 | IVF 实验室 126DUAL(1-6)操作台上 |
| 6 | Tank 样品储存液氮罐 | XC47/11-10 | 3 | 15600 | 美国 MVE | MPB2017450605 U/MPB20174506 88U/MPB201745 0691U | IVF 实验室·冷冻室 |
| 7 | injector 普通气压注射器 | SAS | 4 | 15400 | 英国 RI | | 取卵室 |
| 8 | Cameras 摄像头 | WAT-221S | 3 | 3600 | Watee | | 备用·存放二楼库房 |
| 9 | Centrifuge 离心机 | 5702 | 1 | 50000 | Eppendorf | 5702GP344636 | 一楼男科实验室 |
| 10 | incubator 电热恒温培养箱 | DHP-9082 | 1 | 8000 | 上海一恒 | 180621874 | 二楼男科实验室 |
| 11 | incubator 台式培养箱 | C-TOP | 16 | 91000 | 德国 | 148760500/14876 0509/148760449/ 148760502/14876 0505/148760507/ 148760457/14876 0499/148760498/ 148760458/14876 0455/148760453/ 148760461/14876 0448/148760506/ 148760452 | IVF 实验室 |
| 12 | inverted  scope 生物显微镜 | Ti-S | 2 | 177000 | 日本 NIKON | 734616/734568 | IVF 实验室·L126MP1/2 |

| 13 | incubator 二氧化碳培养箱 | C200 | 1 | 165000 | 德国 | 13946-2096 | IVF 实验室 |
| 14 | Microscope 生物显微镜 | E200 | 1 | 24200 | 日本 NIKON | 611814 | IVF 实验室·L126MP1 |
| 15 | 4'Hood 洁净工作台 | VS-1300L | 1 | 12500 | 苏净 | A18084942 | 二楼男科实验室 |
| 16 | 4'Hood 洁净工作台 | VS-1300L | 1 | 12500 | 苏净 | A18084943 | IVF 实验室 |
| 17 | 医用冷藏箱、低温箱 | YC-520L | 1 | 16000 | 中美美菱 | 181140273 | 一楼男科实验室 |
| 18 | 医用冷藏箱、低温箱 | MDF-U548D-C | 1 | 32000 | 松下 | 1880059 | 一楼男科实验室 |
| 19 | 超纯水仪 | GENPURE UF/VF | 1 | 90000 | 赛默飞世尔（上海）仪器 | 42172104 | 一楼洁净间待装 |
| 20 | 大容量离心机 | ST-16 | 1 | 71400 | 赛默飞世尔（上海）仪器 | 42251602 | 一楼男科实验室 |
| 21 | 负压吸引器 | 29655 | 2 | 16400 | 英国 ROCKET Medical 公司 | 174100718837/1741001318837 | 取卵室 |
| 22 | 恒温试管架 | IVS-AI | 2 | 9000 | 丹麦 IVFtech | | 二楼男科实验室 |
| 23 | 电化学发光免疫分析仪 | COBAS E411 | 1 | 257100 | 德国 ROCHE 公司 | 65G8-18 | 二楼男科实验室 |
| 24 | 冰箱（PHCBI） | MPR-414F—PC | 1 | 45000 | 松下健康医疗器械株式会社 | 18090328 | 二楼男科实验室 |
| 25 | 冰箱 | MRP-514-PC | 1 | 59300 | 松下健康医疗器械株式会社 | 17020057 | 二楼男科实验室 |
| 26 | 妇科手术床 | ET400B | 4 | 29600 | 宁波科艺医疗器械有限公司 | C400B-01725/C400B-01726/C400B-01727/C400B-01728 | 移植室 1-4 |
| 27 | 妇科手术床 | ET400B | 2 | 29600 | 宁波科艺医疗器械有限公司 | C400B-01724/C400B-01729 | 取卵室 1-2 |
| 28 | 多功能转运床 | KK728E | 8 | 45000 | 八乐梦床业（中国）有限公司 | 189283000014/190408000004/189283000013/190408000005/19040800008/190408000002/189283000008/190408000007 | 恢复区 |
| 29 | 纯水机 | QM-A-200 | 1 | 280000 | 广州齐美源 | QM18119200-0028 | 二楼男科实验室 |
| 30 | 柜式灭菌柜 | V-120 | 1 | 794300 | 史蒂瑞（上海）贸易有限 | 一楼洁净间，待安装 |

| | | | | | 公司 | | |
|---|---|---|---|---|---|---|---|
| 31 | 台式蒸汽灭菌器 | Vacuklav 23B+ | 1 | 65000 | 广州市元贸贸易有限公司 | 201723-B2025 | 二楼清洁间 |
| 32 | 监护仪 | IM 60 | 2 | 28500 | 深圳市理邦精密仪器股份有限公司 | 261301—M18709 510006/261301— M18709510004 | 移植室 2 |
| 33 | 监护仪 | IM 60 | 2 | 28500 | 深圳市理邦精密仪器股份有限公司 | 261301—M18709 510001/261301— M18709510005 | 取卵室 2 |
| 34 | 监护仪 | IM 60 | 4 | 28500 | 深圳市理邦精密仪器股份有限公司 | 261301—M18709 510002/261301— M18709510003/2 61301—M188060 40001/261301— M18806040002 | 一楼男科实验室 4 台，灵活使用 |
| 35 | 彩色超声诊断仪 | VOLUSON P8 | 3 | 289090.9 | GE Ultrasound Korea, Ltd. | VP8004360/VP80 04363/VP800435 5 | 移植室 3 |
| 36 | 彩色超声诊断仪 | VOLUSON P8 | 2 | 289090.9 | GE Ultrasound Korea, Ltd. | VP8004359/VP80 04414/VP800436 4 | 取卵室 2 |
| 37 | 彩色超声诊断仪 | VOLUSON P8 | 1 | 289090.9 | GE Ultrasound Korea, Ltd. | VP8004358/VP80 04361/VP800441 3/VP8004365 | IUI 室 1 |
| 38 | 彩色超声诊断仪 | VOLUSON P8 | 5 | 289090.9 | GE Ultrasound Korea, Ltd. | VP8004356 | 检查室 5 |
| 39 | 全科诊查台 | Ritter 204 | 5 | 39000 | 美 国 MIDMARK | V1974406/V1974 446/V1974420/V 1974303/V19743 21 | 检查室 3/6/7/8/12 各 1 |
| 40 | 全科诊查台 | Ritter 204 | 1 | 39000 | 美 国 MIDMARK | V1974342 | IUI |
| 41 | FGD 监测系统(培养箱温度检测) | FGD-6700 | 1 | 101077.18 | Sensaphone | | IVF 实验室柱子上 |
| 42 | IT 电子系统 | SRX340 | 20 | 21605.6 | Juniper\思科 | | 一、二楼弱电机房 |
| 43 | 除湿机 | DP-12S | 2 | 5200 | 杭州多乐信电器有限公司 | | IVF 实验室 |
| 44 | 激光破膜仪 | LYKOS | 2 | 280000 | HAMILTON THORNE | 290876/290877 | IVF 实验室 L126MP1/2 |

| 45 | 自增压液氮罐 | YDD-350-V SLPM | 2 | 80000 | 海南锋利气体有限公司 | 17120677/180302 11 | IVF 实验室·冷冻室 |
|---|---|---|---|---|---|---|---|
| 46 | 电脑医疗/办公设备 | DL360G10 等 | 40 | 8933.9 | 广州汇泽信息科技有限公司 | | 各办公室 |
| 47 | 测序仪 MISEQ DX | ILLumina | 1 | 1486000 | ILLUMINA | 20014053 | PGS 实验室 |
| 48 | 伯乐梯度 PCR 仪 | T100 | 1 | 47775 | Bio-Rad | 621BR40518 | PGS 实验室-扩增区 |
| 49 | Thermo Scientific™Sorvall™ 小型台式离心机 | ST 8 | 1 | 46410 | Thermo | 7201-C18101005 | PGS 实验室 |
| 50 | 荧光定量仪 | Qubit 4.0 | 1 | 49140 | Invitrogen | 2322618084279 | PGS 实验室-标本制备 |
| 51 | 迷你离心机 Mini-centrifuge | ELF6 | 1 | 1501.5 | 安胜 | E20180710006 | PGS 实验室-试剂区 |
| 52 | 涡旋振荡器 | Vortex-5 | 1 | 1296.75 | 其林贝尔 | | PGS 实验室-试剂区 |
| 53 | FlashGel 电泳仪 FlashGel Dock System | 57025 | 1 | 9449.9 | Lonza | 112211 | PGS 实验室-标本制备 |
| 54 | 垂直流层单人双层洁净工作台 | BBS-DSC | 1 | 8872.5 | 鑫贝西 | BBS11V1810038 5 | PGS 实验室-标本制备区 |
| 55 | Bioshaker XP 微型混合器 | BiometraBi oShake XP | 1 | 35490 | 德国 ANALYTIKJ ENA(耶拿) | 01014318030184 | PGS 实验室 |
| 56 | 金属浴 | HB-202 | 1 | 7540 | 杭州博日 | BYQ6.O.071803-839 | PGS 实验室-标本制备区 |
| 57 | 通风柜 | Captair 321 smart | 1 | 72750 | ERLAB | 39958-1803 | PGS 实验室 |
| 58 | 医用冰箱(上面 4 ℃下面-20 ℃ | HYCD-205 | 2 | 6825 | 海尔 | BE04T005700BC J3UDWWH(试剂区 ) /BE04T003700B CJ3UL7X5（制备区） | PGS 实验室 |

{01279037}

| 59 | 移液器 | 10ul/20ul/200ul/1000ul | 8 | 2394 | 瑞宁 | 20-200ul:B804329075/B8094750712-20ul:B736644918/B7366450181 100-1000ul:B805368162/B8053685 09 0.5-10ul:B809474369/B804331919 | PGS 实验室-3 个区域 |
| 60 | 手动 12 道移液器（专用吸头） | L12-20XLS | 1 | 10630 | 瑞宁 | B839507717 | PGS 实验室-标本制备 |
| 61 | 手动 12 道移液器（专用吸头） | L12-50XLS | 1 | 10630 | 瑞宁 | B829156670 | PGS 实验室-标本制备 |
| 62 | 手动 12 道移液器（专用吸头） | L12-300XLS | 1 | 10630 | 瑞宁 | B26040725 | PGS 实验室-标本制备 |
| 63 | 磁力架（16 或 96 孔） | BioCanalScientific | 2 | 819 | 百迈格 | | PGS 实验室-标本制备 |
| 64 | UPS 电源 | C6KS100AH(4800W,2 | 1 | 23205 | 山特电子 | | PGS 实验室 |
| 65 | 纯水仪（可制备 18.2MΩ 纯水） | PURIST UV | 1 | 26617.5 | 上海 Rephile | S8PW080209 | PGS 实验室-标本测序 |
| 66 | 伯乐梯度 PCR 仪 | T100 | 1 | 47775 | Bio-Rad | 621BR42813 | PGS 实验室-标本制备 |
| 67 | 垂直流层单人双层洁净工作台 | BBS-DSC | 1 | 8872.5 | 鑫贝西 | BBS11V18100 45S | PGS 实验室-标本制备 |
| 68 | 诊查椅 | Ritter276 | 6 | 4900 | 美 国 MIDMARK | | 实验室、检查室 |
| 69 | 电热恒温水浴箱 | HH600600*300*200mm | 1 | 748 | 虞祥达 | 181395 | 二楼男科实验室 |
| 70 | 电子天平 | 3002 型 300g/0.01g | 1 | 297 | 力辰 | /00929 | 二楼男科实验室 |
| 71 | 血球机械计数器 | 9 位 | 1 | 236 | 新康 | | 二楼男科实验室 |
| 72 | 手持式血液分析仪 | 300G | 1 | 106200 | Abbott | | IVF 实验室,含试剂 |
| 73 | US 彩超打印机 | US | 6 | 20000 | | | 未到货，位置待定 |
| 74 | 罗氏化学发光仪专用桌 | E411 | 1 | 6000 | | | 男科实验室 |
| 75 | 实验室升降座椅 | 圆形 43CM | 6 | 1350 | | | 一楼、二楼各实验室 |
| 76 | 实验室靠背椅 | 靠背 | 14 | 1500 | | | 一楼、二楼各实验室 |

| 77 | incubator 台式培养箱 | C-TOP | 16 | 91000 | 德国 | | 实验室·培养室 |
| 78 | inverted scope 生物显微镜 | Ti-S | 2 | 177000 | 日本 NIKON | | 实验室·培养室在 L126MP（1）的操作台上 |
| 79 | | | | | | | 实验室·培养室在 L126MP（2）的操作台上 |
| 80 | incubator 二氧化碳培养箱 | C200 | 1 | 165000 | 德国 | | 实验室·培养室 |
| 81 | Micorscope 生物显微镜 | E200 | 1 | 24200 | 日本 NIKON | | 实验室·培养室在 L124(1)操作台上 |
| 82 | 4'Hood 洁净工作台 | VS-1300L | 2 | 12500 | 苏净 | | |
| 83 | Refrigerator with Freezer 低温保存箱 | MDF-U548 D-C | 1 | 32000 | 日本松下 | | |
| 84 | 电化学发光免疫分析仪 | COBAS E411 | 1 | 257100 | 德国 ROCHE 公司 | | 二楼男科实验室 |
| 85 | 冰箱 | MPR-414-F | 1 | 45000 | 松下健康医疗器械殊式会社 | | |
| 86 | 冰箱 | MRP-514-P C | 1 | 59300 | 松下健康医疗器械殊式会社 | | |
| 87 | 妇科手术床 | ET400B | 6 | 29600 | 宁波科艺医疗器械有限公司 | | 移植室1中 m 移植室2中,移植室3中,移植室4中,取卵室1中,取卵室2中 |
| 93 | 柜式灭菌柜 | V-120 | 1 | 794300 | 史蒂瑞（上海）贸易有限公司 | | |
| 94 | 台式蒸汽灭菌器 | Vacuklav 23B+ | 1 | 65000 | 广州市元贸贸易有限公司 | | |
| 95 | 监护仪 | IM 60 | 8 | 28500 | 深圳市理邦精密仪器股份有限公司 | | 1-8号暂时都要放在实验室中的男科实验室中，未贴标编号 |
| 96 | 彩色超声诊断仪 | VOLUSON P8 | 11 | 289090.9 | GE Ultrasound Korea, Ltd. | | 3 台暂时放在一楼实验室，未编号，8个在二楼采血室存放，其中1台有问题，待处 |

{01279037}

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | 理。29 日从二楼搬到一楼实验室 7 台 |
| 97 | 三代设备 MISEQDX | ILLumina | 1 | 1486000 | 北京嘉宝仁和医疗科技有限公司 | | |
| 98 | US 彩超打印机 | | 6 | 20000 | 通用电气医疗系统贸易发展（上海）有限公司 | | |
| 99 | 电脑桌子 | | 12 | | | | 综合办公室 |
| 100 | 电脑桌下柜子 | | 12 | | | | 综合办公室 |
| 101 | 组合柜子 | | 1 | | | | 综合办公室 |
| 102 | 咖啡吧桌子 | | 1 | | | | 走廊 |
| 103 | 办公桌 | | 1 | | | | 诊室 1 |
| 104 | 办公桌 | | 1 | | | | 诊室 2 |
| 105 | 办公桌 | | 1 | | | | 诊室 3 |
| 106 | 办公桌 | | 1 | | | | 诊室 4 |
| 107 | 办公桌 | | 1 | | | | 诊室 5 |
| 108 | 办公桌 | | 1 | | | | 诊室 6 |
| 109 | 办公桌 | | 1 | | | | 诊室 7 |
| 110 | 办公桌 | | 1 | | | | 诊室 8 |
| 111 | 办公桌 | | 1 | | | | 诊室 9 |
| 112 | 办公桌 | | 1 | | | | 诊室 10 |
| 113 | 办公桌 | | 1 | | | | 诊室 11 |
| 114 | 办公桌 | | 1 | | | | 诊室 12 |
| 115 | 半圆桌 | | 1 | | | | 诊室 1 |
| 116 | 半圆桌 | | 1 | | | | 诊室 2 |
| 117 | 半圆桌 | | 1 | | | | 诊室 3 |
| 118 | 半圆桌 | | 1 | | | | 诊室 4 |
| 119 | 半圆桌 | | 1 | | | | 诊室 5 |
| 120 | 半圆桌 | | 1 | | | | 诊室 6 |
| 121 | 椭圆桌 | | 1 | | | | 诊室 7 |
| 122 | 半圆桌 | | 1 | | | | 诊室 8 |
| 123 | 半圆桌 | | 1 | | | | 诊室 9 |
| 124 | 半圆桌 | | 1 | | | | 诊室 10 |
| 125 | 半圆桌 | | 1 | | | | 诊室 11 |
| 126 | 半圆桌 | | 1 | | | | 诊室 12 |
| 127 | 组合柜子 | | 1 | | | | 诊室 7 |
| 128 | 电脑桌 | | 50 | | | | 护士室 |
| 129 | 抽屉柜 | | 56 | | | | 护士室 |
| 130 | 无键盘桌 | | 6 | | | | 护士室 |
| 131 | 组合柜子 | | 1 | | | | 护士室 |

| 132 | 保险柜 | | 1 | | | 医生办 1 |
| 133 | 保险柜 | | 1 | | | 医生办 2 |
| 134 | 保险柜 | | 1 | | | 医生办 3 |
| 135 | 保险柜 | | 1 | | | 医生办 4 |
| 136 | 保险柜 | | 1 | | | 医生办 5 |
| 137 | 保险柜 | | 1 | | | 医生办 6 |
| 138 | GPOZPA    PA-6360 功放机 | | 1 | | | 护士站桌面下 |
| 139 | cD 播放机 | | 2 | | | 护士站桌面下 |
| 140 | 话筒 | | 1 | | | 护士站桌面 |
| 141 | 呼叫对讲器 | | 1 | | | 护士站桌面 |
| 142 | GPOZPA    PA-6360 功放机 | | 1 | | | 恢复区 |
| 143 | cD 播放机 | | 2 | | | 恢复区 |
| 144 | 话筒 | | 1 | | | 恢复区 |
| 145 | 呼叫对讲器 | | 1 | | | 恢复区 |
| 146 | 交换机 | | 2 | 罗丹的 | | 实验室 |
| 147 | 笔记本电脑 | | 2 | | | 实验室 |
| 148 | 显示器 | | 4 | 罗丹项目中 | | 机房 |
| 149 | 门禁 | | 1 | 罗丹项目中 | | 机房 |
| 150 | 主机解码器 | | 1 | 罗丹项目中 | | 机房 |
| 151 | 平台管理服务器 | | 1 | | | 机房机柜中 |
| 152 | 一楼硬盘录像机 | | 1 | | | 机房 |
| 153 | 二楼硬盘录像机 | | 1 | | | 机房 |
| 154 | 工程电话总机 | | 1 | | | 机房 |
| 155 | | | | | | 机房 |
| 156 | 戴尔主机 | | 2 | 一楼实验室换下的 | | 机房 |
| 157 | 戴尔显示器 | | 2 | 一楼实验室换下的 | | 库房 |
| 158 | 键盘 | | 2 | 一楼实验室换下的 | | 库房 |
| 159 | 鼠标 | | 2 | 一楼实验室换下的 | | 库房 |
| 160 | 液氮罐 | | 3 | 新乡市 | | 气体储藏室 |
| 161 | 食品添加剂液体二氧化碳罐 | | 1 | | | 气体储藏室 |
| 162 | 混合气罐 | | 5 | | | 气体储藏室 |
| 163 | 5p 空调 | | 1 | | | 弱电机房 |
| 164 | 除湿机 | | 2 | | | pgs 实验室 |

{01279037}

| 147 | 笔记本电脑 | | 2 | | | | 实验室 |
| 148 | 显示器 | | 4 | | 罗丹项目中 | | 机房 |
| 149 | 门禁 | | 1 | | 罗丹项目中 | | 机房 |
| 150 | 主机解码器 | | 1 | | 罗丹项目中 | | 机房 |
| 151 | 平台管理服务器 | | 1 | | | | 机房机柜中 |
| 152 | 一楼硬盘录像机 | | 1 | | | | 机房 |
| 153 | 二楼硬盘录像机 | | 1 | | | | 机房 |
| 154 | 工程电话总机 | | 1 | | | | 机房 |
| 155 | | | | | | | 机房 |
| 156 | 戴尔主机 | | 2 | | 一楼实验室换下的 | | 机房 |
| 157 | 戴尔显示器 | | 2 | | 一楼实验室换下的 | | 库房 |
| 158 | 键盘 | | 2 | | 一楼实验室换下的 | | 库房 |
| 159 | 鼠标 | | 2 | | 一楼实验室换下的 | | 库房 |
| 160 | 液氮罐 | | 3 | | 新乡市 | | 气体储藏室 |
| 161 | 食品添加剂液体二氧化碳罐 | | 1 | | | | 气体储藏室 |
| 162 | 混合气罐 | | 5 | | | | 气体储藏室 |
| 163 | 5p 空调 | | 1 | | | | 弱电机房 |
| 164 | 除湿机 | | 2 | | | | pgs 实验室 |

# EXHIBIT 4

[01251856]

## No. 1 Intermediate People's Court of Hainan Province

## Civil Ruling

(2019) Qiong 96 Cai Bao No. 13

**Claimant: Hainan HRC Hospital Management and Consulting Co., Ltd.**
Address: Room 201, No. 107 Coast Street, Bo'ao Town, Qionghai City, Hainan Province
Legal Representative: John Gorden Wilcox
Attorney: Yi Zhang, Yang Liu of Llinks Law Offices

**Respondent: Ciming Bo'ao International Hospital Co., Ltd.**
Address: Room 308, No. 107 Coast Street, Bo'ao Town, Qionghai City, Hainan Province
Legal Representative: Xiaohong Han

On 20 September 2019, the Claimant, Hainan HRC Hospital Management and Consulting Co., Ltd., submitted the Application for Asset Preservation to this Court prior to the commencement of arbitration, requesting: (1) an order to freeze Respondent's bank deposit of RMB 143,310,295.08 or other properties equivalent to that amount; (2) an order to seal up the device, equipment and other properties at the IVF Center of Respondent. The People's Insurance Company (Group) of China Limited Hainan Branch issued a letter of guarantee to the Claimant covering RMB 143,310,295.08.

This Court reviewed the case materials and hold that, the Application for Asset Preservation satisfied the legal requirements for preservation of asset, and the People's Insurance Company (Group) of China Limited Hainan Branch has provided a letter of guarantee. Pursuant to Articles 101, 102 and 103(1) of the Civil Procedure Law of the People's Republic of China, the Court rules that:

1. Freeze the Respondent's bank deposit of RMB 143,310,295.08 or other properties equivalent to that amount (see List of Properties);

2. The application fee of RMB 5,000 shall be advanced by the Claimant;

3. This ruling shall take effect and be enforced immediately.

If the Respondent disagrees with this ruling, it could apply to this Court for review of this ruling within 5 days upon receipt of this ruling. Enforcement of the ruling shall not be suspended during the review period.

Where the Claimant failed to file a lawsuit or apply for arbitration within 30 days from implementing the asset preservation measures, this Court shall lift the asset preservation measures.

Presiding Judge: Shengze Huang
Judge: Linyan Zhang
Judge: Naru Wang

Dated 24 September 2019

Court Clerk: Youcheng Chen



# 海南省第一中级人民法院

# 民 事 裁 定 书

（2019）琼 96 财保 13 号

扫描全能王 创建

# 海南省第二中级人民法院

# 民 事 裁 定 书

（2019）琼96财保13号

申请人：海南亨廷顿医院管理咨询有限公司，住所地：海南省琼海市博鳌镇海滨街107号201室。

法定代表人：约翰·戈登威尔考(John Gorden Wilcox)。

委托诉讼代理人：张移，上海市通力律师事务所律师。

委托诉讼代理人：刘洋，上海市通力律师事务所律师。

被申请人：慈铭博鳌国际医院有限公司（原名：海南博鳌慈铭奥亚医院有限公司），住所地：海南省琼海市博鳌镇海滨街107号308室。

法定代表人：韩小红。

申请人海南亨廷顿医院管理咨询有限公司于2019年9月20日向本院申请诉前财产保全，请求：1.查封、扣押、冻结被申请人银行存款人民币143310295.08元或其他等值财产；2.封、扣押、冻结放置于慈铭博鳌国际医院生殖健康及不孕不育部医疗装置、设备和物品。担保人中国人民财产保险股份有限公司海南省分公司为申请人海南亨廷顿医院管理咨询有限公司提供担保，保险金额为人民币143310295.08元。

— 1 —

扫描全能王 创建

本院经审查认为，申请人海南亨廷顿医院管理咨询有限公司申请诉前财产保全，担保人中国人民财产保险股份有限公司海南省分公司为申请人海南亨廷顿医院管理咨询有限公司提供担保，符合法律规定。依照《中华人民共和国民事诉讼法》第一百零一条、第一百零二条、第一百零三条第一款之规定，裁定如下：

查封、冻结被申请人慈铭博鳌国际医院有限公司银行存款人民币 143310295.08 元或等值财产（详见查封清单）。

案件申请费 5000 元，由申请人海南亨廷顿医院管理咨询有限公司预交。

本裁定立即开始执行。

如不服本裁定，可以自收到裁定书之日起五日内向本院申请复议一次。复议期间不停止裁定的执行。

申请人在人民法院采取保全措施后三十日内不依法提起诉讼或者申请仲裁的，本院将依法解除保全。



bdaeyrsm976vvolmps
案件唯一码

本件与原本核对无异

审　判　长　　黄　声　泽
审　判　员　　张　林　燕
审　判　员　　王　娜　茹



二〇一九年九月十四日

书　记　员　　陈　有　程

- 2 -

扫描全能王 创建

# EXHIBIT 5

{01251856}

行为保全申请书

**Application for Injunctive Measures**

| | | |
|---|---|---|
| 申请人 | ： | 海南亨廷顿医院管理咨询有限公司 |
| **Claimant** | | **Hainan HRC Hospital Management and Consulting Co., Ltd.** |
| 住所 | ： | 海南省琼海市博鳌镇海滨街 107 号（201 室） |
| Address | | Room 201, No. 107 Coast Street, Bo'ao Town, Qionghai City, Hainan Province |
| 法定代表人 | ： | 约翰•戈登威尔考（John Gorden Wilcox） |
| Legal representative | | John Gorden Wilcox |
| 联系电话 | ： | (021) 60433995 或 18817582532 |
| Contact number | | +21 6043 3995 or 188 1758 2532 |
| 确认的送达地址 | ： | 上海市银城中路 68 号时代金融中心 16 楼(200120) 上海市通力律师事务所 刘洋律师收 |
| Confirmed delivery address | | Liu Yang, Attorney-at-law, 16F, ONE LUJIAZUI, 68 Yin Cheng Road Middle, Shanghai, P.R.China |
| | | |
| 被申请人 | ： | 慈铭博鳌国际医院有限公司<br>(原名: 海南博鳌慈铭奥亚医院有限公司) |
| **Respondent** | | **Ciming Boao International Hospital Co., Ltd. (formerly Hainan Boao Ciming Aoya Hospital Co., Ltd.)** |
| 住所 | ： | 海南省琼海市博鳌镇海滨街 107 号（308 室） |
| Address | | Room 308, No. 107 Coast Street, Bo'ao Town, Qionghai City, Hainan Province |
| 统一社会信用代码 | ： | 91469002MA5RD4M96T |
| Unified Social Credit Code | | 91469002MA5RD4M96T |
| 法定代表人 | ： | 韩小红 |
| Legal representative | | Xiaohong Han |
| 联系电话 | ： | 13601228666 |
| Contact number | | 136 0122 8666 |

**申请事项**
**Claims**

1. 请求贵院裁定被申请人允许申请人进入慈铭博鳌国际医院生殖健康及不孕不育部
   (以下简称"IVF 中心", 具体地址为海南省琼海市中原镇博鳌乐城国际医疗旅游先
   行区 09 单元 5 地-018 号), 使申请人可以搬离其放置于 IVF 中心的由申请人所有的
   医疗装置、设备和物品, 或将该等物品交付人民法院指定的第三方保管（以下合称
   "申请人物品"）。

   Order the Respondent to allow the Claimant to enter the Fertility Health and Infertility
   Department of Ciming Bo'ao International Hospital Co., Ltd. ( "**IVF Center**") with its
   address Unit 5 - No. 018, Boao Lecheng International Medical Tourism Pioneer Zone,
   Zhongyuan Town, Qionghai City, Hainan Province, and allow the Claimant to move
   away the medical device, equipment and other items owned by the Claimant at the IVF
   Center(collectively "**Claimant's Items**"), or move the Claimant's Items to a third party
   designated by the People's Court.

2. 请求贵院裁定被申请人停止清点、使用、转移、出售或以其他方式处置申请人物品。
   Order the Respondent to stop counting, using, transferring, selling or otherwise
   disposing of the Claimant's Items.

3. 请求贵院裁定被申请人妥善保管申请人物品, 使其不得受损或灭失, 直至申请人将
   申请人物品从 IVF 中心搬离。
   Order the Respondent to properly keep the Claimant's Items and to prevent them from
   being damaged or destroyed until the Claimant's Items are properly moved away from
   of IVF Center.

4. 请求贵院裁定被申请人暂停 IVF 中心的所有营业活动, 直至申请人将申请人物品从
   IVF 中心搬离。
   Order the Respondent to suspend all business activities in IVF Center until the
   Claimant's Items are properly moved away from IVF Center.

**事实及理由**
**Facts and Grounds**

   关于中国国际经济贸易仲裁委员会受理的申请人、HRC-Hainan Holding Company, LLC、
D&W Holding Company, LLC 与被申请人《合作协议》纠纷仲裁案（以下简称"**仲裁案**"）, 申
请人、HRC-Hainan Holding Company, LLC、D&W Holding Company, LLC 与被申请人于 2017

年 9 月 10 日签署《合作协议》，约定申请人全面负责运营及管理 IVF 中心。根据《合作协议》约定，目前放置于 IVF 中心的医疗设备等物品均是申请人出资购买的，申请人对这些物品享有所有权。然而，被申请人拒绝履行合同约定，企图将申请人所有的医疗设备和 IVF 中心占为己有。其具体体现为：被申请人的保安阻止申请人的工作人员进入 IVF 中心开展正常工作；被申请人强行替换 IVF 中心的门锁，使申请人的工作人员无法对 IVF 中心内的医疗设备进行保养维护；由于申请人所有医疗设备放置在 IVF 中心内，该等医疗设备实际上被被申请人所控制；此外，被申请人对外宣传将开业运营 IVF 中心，其可能盘点或使用了申请人的医疗设备。

In relation to the arbitration regarding the dispute arising from the Collaboration Agreement between the Claimant, HRC-Hainan Holding Company, LLC, D&W Holding Company, LLC and the Respondent (hereinafter "**Case**"), the Claimant, HRC-Hainan Holding Company, LLC, D&W Holding Company, LLC and the Respondent concluded the Collaboration Agreement on September 10, 2017, which provides that the Claimant will take full charge of operating and managing IVF Center. According to the Agreement, the medical equipment and other items currently placed in IVF Center were purchased by the Claimant, and the Claimant has ownership over these items. However, the Respondent refused to perform the contract and attempted to take possession of all medical equipment owned by the Claimant and even the IVF Center. The specific acts of the Respondent are as follows: the Respondent instructed its security guard prevent the Claimant's staff from entering the IVF Center and interfere them to work normally; the Respondent forcibly replaced door locks of IVF Center, so that the Claimant's staff could not maintain and repair the medical equipment at IVF Center; since all the Claimant's medical equipment is placed in IVF Center, the equipment is now controlled by the Respondent; in addition, the Respondent publicizes the operation of IVF Center, which means that the Claimant's medical device may already have been used.

由于申请人放置在 IVF 中心内的物品包括诸多价格昂贵、需要专业人员操作和定期维护的高端医疗设备。被申请人并不具备操作和维护该等设备的人员、技术和经验，一旦被申请人对该等设备进行不当使用、操作或搬动，或未对其进行妥善保管或定期维护，极有可能造成申请人医疗设备的毁损、灭失。如被申请人开业运营 IVF 中心必将使用和消耗申请人物品，将导致前述设备遭受毁损、灭失的巨大风险，给申请人造成巨额且难以挽回的损失。

The Claimant's Items in IVF Center include quantities of expensive and high-end medical equipment that requires professional operation and regular maintenance. The Respondent does not have the personnel, technology and experience to operate and maintain such equipment. Once the Respondent uses, operates or moves the equipment, in an improper manner or does not properly keep or regularly maintain them, it will highly likely damage and destroy the medical equipment. If the Respondent operates the IVF Center, the Claimant's Items may be used and consumed improperly, which will damage the medical equipment and lead to a huge amount of irreparable

losses to the Claimant.

鉴于申请人已在仲裁案中请求裁决被申请人将属于申请人所有的物品归还于申请人，为了防止被申请人在仲裁审理期间非法清点、使用、转移、出售或以其他方式处置申请人放置于IVF中心的申请人物品，导致申请人物品毁损或灭失，使申请人遭受巨额损失并导致未来的仲裁裁决无法得到执行，申请人现根据《中华人民共和国民事诉讼法》第一百条的规定，特向贵院提出如上保全申请，请依法办理。

As the Claimant requested in the Case, the Respondent shall return all the Claimant's Items back to the Claimant. According to Article 100 of the PRC Civil Procedure Law, the Claimant now requests for the above injunctive measures in order to prevent the Respondent from illegally counting, using, transferring, selling or otherwise disposing the Claimant's Items in IVF Center during the arbitration proceedings, which may otherwise result in considerable losses of the Claimant and render the final award ineffective. Please grant all the reliefs sought by the Claimants in accordance with the law.

此致
Sincerely,

海南省第一中级人民法院
Hainan No.1 Intermediate People's Court

**申请人：海南亨廷顿医院管理咨询有限公司**
Claimant: Hainan HRC Hospital Management and Consulting Co., Ltd.

公章: Official seal:

2019 年 8 月　　日
August 2019