United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HRC-HAINAN HOLDING COMPANY, LLC,<br><br>Applicants,<br><br>v.<br><br>YIHAN HU, et al.,<br><br>Respondents. | Case No. 19-mc-80277-TSH<br><br>**ORDER GRANTING MOTION FOR SANCTIONS; ORDER TO SHOW CAUSE RE: CONTEMPT OF COURT**<br><br>Re: Dkt. No. 59 |

Before the Court is Applicants' Motion for Sanctions for Violating the Court's February 25 Discovery Order (the "Sanctions Motion"), filed March 12, 2020. ECF No. 59. For the reasons set forth below, the Court **GRANTS** Applicants' Motion.

## I. BACKGROUND

Applicants sought leave to serve subpoenas on Respondents under 28 U.S.C. § 1782 to obtain discovery for use in two proceedings in the People's Republic of China. ECF No. 1. The Court granted Applicants' ex parte application. ECF No. 5. Respondents then moved to quash the subpoenas, ECF No. 15, and Applicants moved to compel discovery, ECF No. 14. On February 25, 2020, the Court granted in part Applicants' motion to compel discovery and ordered Respondents to produce documents by March 6, 2020. ECF No. 47.

Respondents filed an appeal with the Ninth Circuit Court of Appeals on February 28. ECF No. 49. Late in the day on March 5, on the eve of the production deadline, Respondents filed a motion for a stay pending appeal. ECF No. 53. The motion was largely recycled from a prior motion to stay in a previous appeal, *see* ECF No. 21, with a new page of argument about law of the case. March 6 came and went, and Respondents did not produce documents. On March 12,

before the Court had ruled on the motion to stay, Applicants filed their Sanctions Motion. ECF No. 59. The Court denied the request for a stay pending appeal on March 17, 2020. ECF No. 61. The following day Respondents filed an Emergency Motion for Reconsideration. ECF No. 64. The Court denied the motion the same day. ECF No. 65. On March 19, Respondents filed an emergency motion in the Court of Appeals under Circuit Rule 27-3 to stay this Court's February 25 Order. They filed an Opposition to Applicants' Sanctions Motion on March 20, 2020. ECF No. 65. In that Opposition, they asserted that the CIETAC Tribunal had issued an order on March 18 rejecting Applicants' attempted submission of additional materials. On March 22 Respondents filed a pleading entitled a "Supplemental Opposition" to Applicants' Sanctions Motion, which really just amounted to an improper request that the Court suspend Respondents' discovery obligations. ECF No. 66.[1]

On March 23, the Ninth Circuit issued a temporary administrative stay of the February 25 order. ECF No. 67. On March 30, the Ninth Circuit denied Respondents' emergency motion for a stay of this Court's Order. ECF No. 70.

## II. APPLICANTS' MOTION FOR SANCTIONS

### A. Legal Standard

Applicants move for sanctions pursuant to Federal Rule of Civil Procedure 37(a)(5)(A) and 37(b)(2)(A). Rule 37(a)(5)(A) directs that a court order attorney's fees if a party moves to compel discovery and the motion is granted. However, under Rule 37(a)(5)(A), the court must not order payment of fees if (1) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (2) the opposing party's nondisclosure, response, or objection was substantially justified; or (3) other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).

If a party fails to obey an order to "provide or permit discovery, including an order under Rule 26(f), 35, or 37(a)," Rule 37(b)(2)(A) authorizes the court where the action is pending to

---

[1] Respondents' appeal of the February 25 order is what made their motion improper, as the appeal divested this Court of jurisdiction to reconsider or vacate the February 25 order. The Court is not suggesting that it has any desire to vacate or reconsider the order; it is merely noting why Respondents' motion was improper.

"issue further just orders," which may include "treating as contempt of court the failure to obey" the order. Fed. R. Civ. R. 37(b)(2)(A). Furthermore, "[i]nstead of or in addition to" those orders, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C); *see also LegalForce RAPC Worldwide P.C. v. Demassa*, 2019 WL 5395038, at *4 (N.D. Cal. Oct. 22, 2019) ("Most remedies 'for dilatory conduct during discovery proceedings' are discretionary,'" but Rule 37(b)(2)(C) is not.) (quoting *Bollow v. Federal Reserve Bank of San Francisco*, 650 F.2d 1093, 1102 (9th Cir. 1981)). Since "Rule 37(b)(2) provides for the award of reasonable expenses and attorney's fees 'caused by the failure' to obey a court order to provide or permit discovery," the provision is distinguishable from Rule 37(a), "which provides for the award of expenses resulting from efforts to secure an order compelling discovery." *Liew v. Breen*, 640 F.2d 1046, 1051 (9th Cir. 1981).

Lastly, section 1782 provides that "[t]o the extent that the order does not prescribe otherwise," discovery shall be produced, "in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. § 1782. Thus, section 1782 authorizes a court to issue orders under Rule 37. *See In re Application of Chevron Corp.*, 709 F. Supp. 2d 283, 302 (S.D.N.Y. 2010) ([S]ection 1782(a) . . . contemplates the issuance of a subpoena or an order to produce and then, in the event of noncompliance, an application for sanctions, which may include contempt.").

**B.     Analysis**

There is no doubt that Respondents violated the February 25 order. It required them to produce documents by March 6, and they didn't. At the time of the violation, there was no stay in place, either by this Court or by the Ninth Circuit, so they were legally obligated to produce the documents, and they just didn't do so. They filed a motion to stay the February 25 order late on March 5, but the stay motion by itself didn't do anything. A motion is just "[a] request for a court order," Fed. R. Civ. Proc. 7(b)(1). "[T]he filing of a motion to stay discovery does not automatically relieve the movant from continuing to comply with its discovery obligations." *Wells Fargo Bank, N.A. v. Iny*, 2014 WL 1796216, *3 (D. Nev. May 6, 2014) (citing *Willemijn*

3

*Houdstermaatschaapij BV v. Apollo Computer, Inc.*, 707 F. Supp. 1429, 1441 (D. Del. 1989) ("Defendant's argument assumes that the moment it has filed a motion to stay discovery . . . it need no longer obey basic discovery rules. . . . Simple logic teaches that . . . unless and until it is granted a stay, defendant should be required to conduct discovery as if no motion had been filed at all.")); *Nat'l Corporate Tax Credit Funds III v. Potashnik*, 2008 WL 11339608 at *1 (C.D. Cal. June 16, 2008) ("That defendants have sought a stay is insufficient to avoid their discovery obligations.") (quoting *Tinsley v. Kemp*, 750 F. Supp. 1001, 1013 (W.D. Mo. 1990) ("[B]y refusing to comply with discovery merely because a motion to stay is pending, a party effectively is granting its own motion to stay — even before the court has ruled. Such a phenomenon would reduce a court's orders to useless and senseless formalities."); *Hydramar, Inc. v. General Dynamics Corp.*, 115 F.R.D. 147, 153 (E.D. Pa. 1986) (the "mere filing of the motion to stay discovery was not sufficient to relieve it of its duty to produce")). There was a temporary stay in place from March 23-30 by the Ninth Circuit, but that stay came 17 days after the violation began.

So, the Court must determine if this violation was substantially justified or whether other circumstances make an award of expenses unjust. It's easy to imagine a situation in which violating a court order might be substantially justified, especially when you're trying to appeal it. Suppose a court orders you to produce all your attorney-client privileged documents *tomorrow*. You immediately move for a stay while you frantically draft your mandamus petition. Briefing on the stay motion, and a decision by the court, are unlikely to be completed in a day, which means you are faced with either being in violation of the court order or facing significant prejudice to your client if you comply. You can change this hypothetical in a bunch of different ways to come up with other situations where violating a court order might be substantially justified. Suppose a court sets a production deadline in a section 1782 proceeding (like this one). You file a stay motion as soon as you reasonably can after the court issues the order, but the court sits on the motion for weeks. The common theme in situations where violating a court order could be substantially justified is that *you tried your best to avoid the violation*.

However, it is also easy to come up with hypotheticals where the violation has no justification at all. Suppose you're in a section 1782 proceeding and the court sets a production

4

deadline that's 10-15 days out. You could easily write the stay motion and get it on file. It would take no more than a few hours. But you decide not to. No, instead of promptly seeking a stay, you wait. And wait. And wait. Then, the night before the production deadline, you file your stay motion. You could easily have filed it much sooner, you could have given the court time to consider and rule on it by the time of your production deadline, but you deliberately chose not to. You waited so long to move for a stay that *you* created the situation where the production deadline is tomorrow, and it's not feasible to brief the stay motion and get a court ruling in time. In this situation, when the production deadline passes, there is no substantial justification for being in violation of the court's order. It's your fault. You didn't do anything to promptly seek a stay.

So, the substantial justification inquiry comes down to this: did the litigant make a diligent effort to avoid being in violation of the court order?

Here, Respondents did not, and in fact the Court's just-described "hypothetical" scenario of a violation with no justification at all is essentially what happened here. The Court granted Applicants' motion to compel on February 25, 2020 and ordered Respondents to produce documents by March 6, 2020. Respondents didn't file their motion to stay pending appeal until late in the day on March 5, even though the motion was largely recycled from a prior filing. There wasn't any reason for Respondents to wait until the eve of the production deadline to file their motion to stay. In fact, they admit that. Respondents argue that "they have never pretended that they were unable to file the renewed motion to stay prior to March 5," ECF No. 65 at 2, but that is precisely the problem. Respondents did not diligently move for a stay, but they should have. The timing of their stay motion unavoidably put them in violation of the February 25 order, and that could have been prevented by moving for a stay promptly. All of Respondents' arguments boil down to the assertion that moving for a stay was good enough and that it doesn't matter how dilatory they were in moving for one. They're wrong.

Further, although a finding of bad faith isn't necessary to award fees for a violation of a court order, the circumstances of this case strongly indicate that Respondents acted in bad faith. They waited until March 5 to move for a stay as part of their larger strategy of dragging things out as long as possible in the hope of running out the clock in the Chinese arbitration proceeding, so

5

that even if Applicants prevail in this 1782 proceeding, it will be too late to do them any good in one of the two foreign proceedings they want to use this evidence for. Respondents did not move quickly to file a stay motion because they didn't want that issue addressed quickly. They were happy to be in violation of a court order as the stay litigation played out because it meant the clock was ticking, potentially prejudicing Applicants. The circumstances here suggest bad faith, which is the opposite of substantial justification.

The Court finds Respondents' failure to comply with its order was not substantially justified, and thus an award of reasonable expenses, including attorney's fees, is appropriate under Fed. R. Civ. P. 37(b)(2)(C).

### C. Attorneys' Fees

Applicants' Counsel, Grant L. Kim, avers that leading up to March 12, when Applicants filed their Sanctions Motion, Applicants incurred $11,110 in extra attorney's fees as a result of Respondents' noncompliance with the Court's order. Decl. of Grant L. Kim in Supp. of Applicants' Mot. for Sanctions ("Kim Decl.") ¶ 24, ECF No. 59-1. He explains that the fees related to: (1) preparation of the Sanctions Motion as well as supporting declarations; (2) legal research relevant to that motion; (3) extensive communications with Respondents' counsel and the Court about this matter, including communications with Respondents about their refusal to produce discovery; (4) legal research for Applicants' Opposition to Respondents' renewed motion to stay; and (5) preparation of that Opposition. *Id.* ¶ 25. According to Kim, he worked well over 12 hours on those tasks, and a litigation associate in his Los Angeles office, Alex Su, worked at least 10 hours on the tasks. *Id.* ¶ 26. Kim claims an hour billing rate of $650 per hour, and a rate of $330 per hour for Su, for a total amount billed through March 12 of $11,110 (12 hrs at $650 + 10 hrs at $330). *Id.* ¶ 27.

However, not all of those fees are recoverable. The first three categories of tasks relate to the sanctions motion, as those fees would not have been incurred if Respondents had complied with the February 25 order. However, the last two categories are expenses incurred in opposing the stay motion. Those fees would have been incurred regardless. Respondents were entitled to move for a stay. The Court has faulted them for the dilatory timing of their stay motion, not for

filing one at all, which was their right. Since most of the pre-March 12 tasks for which Applicants seek fee recovery are appropriately compensable, but the last two categories are not, the Court will conservatively cut the fees as of March 12 in half to $5,055.

Kim avers that since March 12, Applicants have incurred around $16,000 in additional fees related to further briefing on the Sanctions Motion. Supp. Decl. of Grant L. Kim in Supp. Of Applicants' Mot. For Sanctions ("Kim Supp. Decl.") ¶ 5, ECF No. 72. In particular, he explains that he spent 19.4 hours preparing Applicants Reply in Support of Motion for Sanctions along with supporting declarations (ECF Nos. 69, 69-1, and 69-2). *Id.* Su spent 10.2 hours on legal research and in assisting Kim with drafting the Reply. *Id.* Thus, Applicants incurred $15,976 on those tasks (19.4 hrs at $650 + 10.2 hrs at $330).[2] Additionally, Kim says that he spent six hours preparing his supplemental declaration in support of sanctions and the accompanying brief, amounting to $3,900 in fees. *Id.* ¶ 6. Thus, since March 12, Applicants incurred $19,876 in attorneys' fees in connection with their Sanctions Motion. (Adding that to the allowed amount for pre-March 12 fees yields $24,931.)

Lastly, Applicants also ask for $21,850 in fees incurred in responding to Respondents' emergency motion for a stay filed with the Ninth Circuit. However, fees that Applicants incurred in responding to Respondents' motion for a stay before the Ninth Circuit were not related to Applications' Sanctions Motion, and thus Rule 37(b)(2) does not provide for the awarding of those fees and they are denied.

Turning to the rest of the fees, "billing rates should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (citations omitted). "Affidavits of [a party's] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)

---

[2] Kim arrived at an amount of $16,270, but his calculation of Su's fees here was slightly off.

7

(citation omitted). Kim asserts in his Declaration that he believes his and Su's hourly billing rates are reasonable considering their level of experience and prevailing market rates. Kim Decl. ¶ 28. Su has over five years of experience in commercial litigation experience, and Kim has over 30 years of experience with commercial litigation and international arbitration, including 25 years at Morrison & Foerster where he held positions as litigation partner, associate, and of counsel. *Id.* ¶¶ 28-29. Courts in this District have found hourly rates of $650 per hour to be reasonable for attorneys with similar experience. *See, e.g.*, *Echague v. Metro. Life Ins. Co.*, 69 F. Supp. 3d 990 (N.D. Cal. 2014) (claimed hourly rate of $650 for ERISA plan beneficiary's lead counsel was reasonable); *Californians for Disability Rights v. California Dep't of Transp.*, 2010 WL 8746910, at *3 (N.D. Cal. Dec. 13, 2010) (awarding $570 and $650 an hour in civil rights case to attorneys with between ten and eighteen years of practice). Applicants' claimed hourly rates are reasonable considering Kim and Su's experience and prevailing rates in this District. Additionally, the Court finds Applicants' fee request reasonable in terms of hours expended. *See, e.g.*, *Davis v. Elec. Arts Inc.*, 2018 WL 1609289, at *7 (N.D. Cal. Apr. 3, 2018) (finding nearly $20,000 billed for work on discovery sanctions motion to be reasonable and awarding a total of $25,000 in addition to evidentiary sanctions); *Cuviello v. Feld Entm't Inc.*, 2015 WL 877688, at *4 (N.D. Cal. Feb. 27, 2015) (awarding $11,275 for work on discovery sanctions motion).

Accordingly, the Court **GRANTS** Applicants' request for attorneys' fees for work related to the Sanctions Motion. Respondents shall pay attorneys' fees to Applicants in the amount of $24,931.

### D. Additional Sanctions

Lastly, the Court must consider whether additional measures are justified here. "The necessity justification for the contempt authority is at its pinnacle, of course, where contumacious conduct threatens a court's immediate ability to conduct its proceedings, such as where a witness refuses to testify, or a party disrupts the court." *Int'l Union v. Bagwell*, 512 U.S. 821, 832 (1994). "Contempts such as failure to comply with document discovery, for example . . . touch upon the core justification for the contempt power." *Id.* at 833; *see also Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1480 (9th Cir. 1992) ("Where the purpose of a civil contempt

sanction is to coerce good faith efforts to comply with a discovery request, contempt is proper.") (citation omitted). Respondents have for nearly a month now failed to comply with the Court's discovery order. The Court **ORDERS** Respondents to **SHOW CAUSE** why they should not be held in contempt of court and, in addition, sanctioned $2,000 per day until they comply with the February 25 order. Their response is due by April 7, and Applicants may reply by April 10.

**IT IS SO ORDERED.**

Dated: April 2, 2020

THOMAS S. HIXSON
United States Magistrate Judge